[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The parties intermarried on March 19, 1982 at Greenwich, Connecticut. The plaintiff has resided continuously in this state since 1974. There is one child, issue of the marriage, Andrew Townley, born August 22, 1986. The evidence clearly demonstrated that this marriage has irretrievably broken down, and judgment may enter dissolving the marriage on that ground. CT Page 68
The plaintiff, age 41, has been a homemaker during the marriage for the family, which included two children of the plaintiff from a former marriage. She enjoys good health and had working experience as a bookkeeper in the past.
The defendant, age 39, is employed as a manager of an executive Recruiter business in Stamford called Hipp Waters. He has held this job for a number of years. The defendant has indicated no health problems.
Both parties offered testimony as to the cause of the breakdown of this relationship. The court finds that each party was not without some fault, but that the defendant must assume the major responsibility for the failure of this marriage. To record for posterity the reasons for this conclusion would serve no useful purpose.
This was a long and difficult trial, consuming parts of eight days. It included many more issues that are normally presented in a dissolution action. There was a prenuptial agreement and a separation agreement presented for approval. There was an issue of sole custody versus joint custody. The plaintiff expressed a desire to relocate to Florida with her son, and that was opposed by the defendant. The court would be remiss if it did not compliment counsel for the parties and counsel for the minor child for their well prepared and presented cases. Their efforts assisted the court in making several most difficult decisions.
The court has carefully considered the evidence presented and the arguments of counsel. It has also considered the criteria set forth in Connecticut General Statutes 46b-56,46b-56a, 46b-52, 46b-81, 46b-82, 46b-84 and 46b-66 in reaching the decisions reflected in the orders that follow.
 I
Prenuptial Agreement
The parties entered into a prenuptial agreement on August 18, 1981. The defendant, by way of a special defense, requests that the agreement, which was instigated by the plaintiff, be enforced.
The court has reviewed the agreement and the circumstances of the parties at the time they executed the contract. The court concludes that the agreement is unenforceable. The parties cohabited before their marriage and purchased their main asset, their current marital residence, during that period. The agreement does not provide how assets acquired together prior to CT Page 69 marriage would be distributed upon dissolution of marriage. Even without that problem, the court would be reluctant to enforce the agreement, because there were changed circumstances, such as the birth of a child, that were not contemplated in the agreement.
In view of the problems stated above, the court finds it unnecessary to further examine the agreement with the considerations suggested in McHugh v. McHugh, 181 Conn. 482, (1980). The court declines to enforce the prenuptial agreement.
 II
Separation Agreement
The defendant left the marital home in February, 1989. On May 3, 1989, the parties executed a separation agreement. The plaintiff, in the second count of her complaint, seeks to have the agreement approved and incorporated into the judgment of dissolution as provided by statute. The defendant, by way of a special defense alleges that the separation agreement is unconscionable and unfair.
Connecticut General Statutes, 46b-66 provides that the court should examine agreements presented for approval, inquire into all the pertinent circumstances and make a determination if the agreement is fair and equitable under all the circumstances. The court has followed this mandate. The court concludes that the separation agreement presented by the plaintiff is not fair and equitable, and therefore, declines to approve the agreement.
Without needing to consider the evidence of the defendant that he executed the agreement under duress or that the attorney who prepared the agreement had a conflict of interest, the court finds that the agreement is inequitable. The court has analyzed the effect of implementing the agreement in accordance with the financial affidavits presented by the parties at that time.
The total value of the assets of the parties was shown as $1,012,800. The joint debts were $57,500. Under the terms of the agreement, based on a value of $900,000 for the marital home, the plaintiff would receive $551,200 and the defendant would receive 274,100, subject to a capital gains tax liability of $120,000. Under the circumstances of this case, the court finds this distribution inequitable.
 III
Custody
A. Sole versus Joint CT Page 70
The parties' son, Andrew, was born on August 22, 1986. He is presently slightly over four years old. In the amended complaint before the court, the plaintiff has requested sole custody. The defendant, in his counterclaim, has requested joint custody. At the last day of trial, the defendant presented the court with a Motion for Conciliation. The court sustained the plaintiff's objection to the motion on the basis of its not being timely filed.
Without getting into the merits of the issue of joint custody, the plaintiff claims that the court cannot award joint custody because there is no agreement between the parties and the court has not granted a motion for conciliation ordering both parties to submit to conciliation. She cites Connecticut General Statutes, 46b-56a(c); Emerick v. Emerick, 5 Conn. App. 649, (1985); and Cabrera v. Cabrera, 23 Conn. App. 330, (1990).
The court notes that in prior pleadings and agreements of the parties, they both agreed to joint custody. The plaintiff, for reasons hereinafter stated, changed her mind. The court further notes that section (c) of 46b-56a provides that the court may order conciliation.
The court, without resorting to prior agreements of the parties or an interpretation of 46b-56a(c) as being permissive, finds from the evidence in this case that the requirements of the statute or the decisions in Emerick and Cabrera would not be offended by the court's awarding joint custody to the parties.
The first requirement that one party requests joint custody has been met, by the defendant's request. As to conciliation, the evidence indicates that after the parties separated in February, 1989, they jointly consulted a marriage counselor between February and May, 1989. In effect, the parties sought conciliation, in advance of seeking court approval. Therefore, the court concludes it does have the authority to award joint custody if it is in the best interests of the minor child. The court adds that it interprets the appellate decisions to permit the trial court to do what is in the best interests of the minor child if one parent seeks joint custody, even if conciliation attempted by the parties proves unsuccessful.
The plaintiff has testified that she changed her mind about joint custody because of a series of incidents between her and the defendant during their period of separation. The parties engaged in arguments and have not communicated with each other since the last encounter. The plaintiff believes that their inability to communicate would prevent joint custody from being workable. She admits that the defendant is a caring, concerned CT Page 71 parent who maintains a good relationship with their son.
The defendant has demonstrated a genuine interest in his son and in his desire to foster and maintain a close relationship. The evidence indicates that both parents have close bonds with Andrew. The court was impressed by the efforts of the defendant to consult professional mental health people to assist him in handling both his and his son's adjustments to the dissolution of marriage process. The defendant has indicated that he would be willing to attempt to communicate with the plaintiff concerning their son's best interests, and the court believes the defendant's sincerity.
Both the Family Services Counselor and the child's attorney recommend joint legal custody. Each advanced cogent reasons for his and her positions.
Although the court recognizes that communications between parents is important in making the joint custodial arrangement work, the court believes that joint legal custody is appropriate in this case. The court was impressed with the plaintiff as being a bright, sensitive young woman who was undergoing a great deal of stress both before and during the trial. She has convinced the court of her love and concern for Andrew, and that she would always attempt to do what was best for the child. Therefore, the court is hopeful that when this trial is behind the parties, the plaintiff will become more prone to communicating with the defendant about Andrew's welfare. It appears to date that the parties have no serious disagreements about how their son is being raised, and it should be noted that the plaintiff will be making, on her own, the daily decisions concerning Andrew. Therefore, their contacts will not have to be numerous. The defendant shall be consulted on issues involving Andrew's health, education and religious training.
There is another reason why the court has decided on joint legal custody. The defendant demonstrated a concern for his son as well as a desire to play a major role as parent in the future. The defendant has had a close relationship with his son in the past. It is to Andrew's benefit for this to continue.
Therefore, the parties are awarded joint legal custody of their minor child. Physical custody of the child is awarded to the plaintiff.
B. Relocation
The plaintiff has indicated a desire to relocate to Florida with her son, after the sale of the marital residence. The defendant opposes the moving of his son that distance. CT Page 72
The court always finds a decision on this issue a most difficult one everytime it is presented. It is more so in this case because of the relationship between the defendant and his son, as described earlier in this memorandum.
After a careful consideration of the evidence, the court is persuaded it would be in the child's best interests that he be permitted to relocate to Florida with his mother. It is so ordered.
The plaintiff has produced valid reasons for her desire to move. The plaintiff's parents reside there and will furnish emotional support to the plaintiff, which is important to the plaintiff at this time. The plaintiff states that she will have I the opportunity to become employed with her family looking after Andrew. She further believes the cost of living in Florida is less than in Connecticut. All these things should improve the plaintiff's quality of life and would have the same effect on Andrew. The plaintiff has been a caring, loving parent, and Andrew should have the opportunity to continue living with her. Also, the court is convinced that the defendant will continue to maintain a meaningful relationship with the child. If the plaintiff fails to cooperate in fostering that relationship, the court would reconsider its decision in permitting the child to live in Florida.
C. Visitation
While the plaintiff resides in Connecticut, the defendant shall spend at least the following time periods with the child.
a. Regular visitation
1. Every other weekend from 6:00 p.m. on Friday until 7:00 p.m. on Sunday, except when Monday is a school holiday in which event the child shall be returned at 8:30 p.m. Monday.
2. At the defendant's option, either:
a. Every Wednesday night from 6:00 p.m. for an overnight visit and take the child to school the following morning; or
b. During the week after the defendant has been with the child for the weekend, the defendant shall pick the child up no later than 6:00 p.m. on Thursday for an overnight visit and take him to school the following morning; and on the Monday after the defendant has not been with the child for the weekend, the defendant shall pick the child up no later than 6:00 p.m. and CT Page 73 return him to the plaintiff's home at 8:30 p.m.
b. Holiday Visitation
1. The parties shall split Christmas so that one parent is with the child on Christmas Eve and the other on Christmas Day.
2. Thanksgiving and Easter shall be alternated on an annual basis.
The regular schedule may be adjusted to accommodate Mother's Day and Father's Day provided any change is requested at least 30 days in advance.
3. The parties shall alternate Andrew's birthday.
c. Extended Visits
1. The defendant shall have at least two 10 day (Friday at 6:00 p.m. through the following Sunday at 7:00 p.m.) extended visits with the child each year, to be scheduled at least 60 days in advance. The length and frequency of such visitations shall be increased as the child's age and development permit. If the parties are unable to agree, either may petition the Superior Court for a resolution.
d. Telephone Access
1. The defendant shall have daily telephone access to the child. The calls shall be at reasonable hours and for a reasonable length of time.
2. The child shall be permitted to call the defendant whenever the child so desires.
3. The plaintiff shall have the same rights to telephone contact when the child is with the defendant.
When the plaintiff and the child relocate to Florida, the defendant shall spend at least the following time periods with the child.
1. Weekend visits in Florida from Friday at Noon until Sunday at 6:00 p.m., twice a month. The defendant shall give the plaintiff at least one week's notice before each visit. The defendant shall be responsible for the costs of transportation.
2. Once every two months extended four day weekend visits in Connecticut, from Friday at 4:00 p.m. until Monday at 6:00 p.m. The defendant shall give the plaintiff at least 30 days CT Page 74 notice of the weekend desired. Every other four day visit shall be at the transportation expense of the plaintiff, who shall have the responsibility of transporting the child to Connecticut and back to Florida.
3. Two week period of visitation in Connecticut by the child during both July and August. The plaintiff shall give the defendant at least 60 days notice of the periods desired. Each party shall transport the child back and forth at his or her expense for one of these trips.
4. The parties shall alternate the Christmas, Easter and Thanksgiving holidays.
 IV
Assets
The court finds that the parties' assets consist of the following:
 1. Real Property at 23 Fox Hill Lane, Darien, Connecticut Fair Market Value — $900,000.00
 less: Mortgage 247,000.00 ____________ Equity $653,000.00
 2. Defendant's Profit Sharing Plan 21,000.00 3. Defendant's IRA Plan 3,452.00 4. Defendant's interest in Moonshot Partnership 32,000.00 5. Defendant's interest in Wilson Cove Leasing 20,000.00 6. Country Club Bond 8,000.00 7. Certificate of Deposit and Savings Bonds 11,000.00 8. Plaintiff's automobile 500.00 9. Defendant's clock collection 17,000.00 ___________ Total $765,952.00
The following orders may enter:
1. The marital residence shall be immediately listed for sale. The listing broker shall be Pierce Realtor or any other real estate broker selected by the defendant, and the listing price shall be $990,000. The court reserves jurisdiction over any disputes arising over the mechanics of sale, including the selling price. CT Page 75
2. Until the residence is sold, the plaintiff shall have exclusive possession of the premises. The defendant shall be responsible for the payment of the mortgage until sale.
3. When the sale of the residence occurs, the following payments shall be made from the gross proceeds:
a. The then outstanding balance on the first mortgage approximating $247,000.00.
b. Real estate brokerage commission, closing costs, including attorney's fees and conveyance taxes.
c. Payment of some of the debts of the parties as specified in the following section covering liabilities.
d. The balance shall be distributed 60% to the plaintiff and 40% to the defendant.
 4. The plaintiff is awarded the following assets: a. The certificate of deposit b. The savings bonds c. The 1984 Volvo automobile
 5. The defendant is awarded the following assets: a. The clock collection b. The country club bond c. The profit sharing plan d. the IRA plan e. The interest in the Moonshot partnership f. The interest in Wilson Cove Leasing
6. At the closing of the sale of the marital residence, the defendant shall pay to the plaintiff as an assignment of property the sum of Forty Thousand ($40,000) Dollars.
7. The personal property of the parties, including furniture and furnishings, shall be divided by their agreement. If they are unable to agree, the court reserves jurisdiction to enter orders, after a hearing, as to distribution of the personal property.
 V
Liabilities
The parties each list several debts on their financial affidavits dated November 27, 1990 by the plaintiff and December 18, 1990 by the defendant. The following orders may enter as to the payment of those debts. CT Page 76
1. From the proceeds of sale of the marital residence, the following debts shall be paid before any distribution of the proceeds of sale are made to the parties. The amounts listed are as shown on the affidavits, and with the inclusion of the fee of the attorney for the minor child, they total approximately $118,000.
 a. Fee for attorney for minor child $11,800.00 b. Parents of the plaintiff 40,000.00 c. Mr. and Mrs. Mares 3,000.00 d. Mr. Raymon Astemendi 5,000.00 e. Mr. and Mrs. Gross 5,000.00 f. CNB loan 24,839.00 g. J. Williams — 1989 Federal Taxes 8,733.00 h. RR Pool 1,431.00 i. Property taxes 5,400.00 j. Reliable Oil 1,100.00 k. ChemLawn 157.00 l. Allstate (house insurance) 99.00 m. Conn. American Water Co. 135.00 n. Dr. R. Lewis 221.00 o. YMCA 502.00 p. Cove Awning 80.00 q. Dr. Goldman 545.00 r. Greenwich Hospital 128.00 s. F. Thos Landscaping 760.00 t. Nielsen's Florist 369.00 u. Schede Plumbing 371.00 v. Ocon Pest Control 146.00 w. Peter's Newspaper Delivery 68.00 x. Thos. Golden 117.00 y. Grieb's Pharmacy 222.00 z. Flaherty Plumbing 60.00 aa. Fuels Inc. 47.00 bb. Mastercard 8,000.00
2. If either party is required to make payments on any of debts scheduled in paragraph 1 above, then he or she shall be reimbursed for fifty percent of all such payments by the other party at the time of the closing of the sale of the marital residence.
3. The defendant shall be responsible for the payment of the following debts a shall indemnify and hold harmless the plaintiff from any liability thereon.
 a. the loan from his mother $ 5,000.00 b. Putnam Trust credit line 5,000.00 c. Real Property Taxes, only in the amount of 2,000.00 d. Wilson Cove leasing; 2,500.00 CT Page 77 e. American Express Co. 1,000.00 f. Defendant's attorney's fees 48,000.00
4. The plaintiff shall be responsible for the payment of the following debts and shall indemnify and hold harmless the defendant from any liability thereon.
 a. Loans, including interest $32,000.00 6,750.00 due her parents 33,000.00 b. St. Luke's School 20,000.00 c. Plaintiff's attorney's fees 60,000.00
 VI
Alimony and Child Support
For the calendar year 1990, the court finds that the defendant's income will be a minimum of $135,500. This consists of a salary of $120,000, a bonus of approximately $13,600 and other income of $1,900. In addition, the defendant received an auto allowance and may be entitled to an additional bonus for the second half of the calendar year, 1990.
In 1991, the defendant will receive a minimum salary of $96,000. Based on the past two years, the defendant is anticipated to receive a bonus as well as other income from one of his investments. The court is basing its following orders on the defendant's earning in 1991 to be a minimum of $115,000.
The following orders may enter.
1. Until the first day of the month following the closing of sale of the marital residence, the death of either party or the plaintiff's remarriage, whichever event first occurs, the defendant shall pay to the plaintiff as unallocated alimony and child support, the current pendente lite order of $2,000 per month. In addition, the defendant shall be solely responsible for the payment of the first mortgage on the marital residence. A contingent wage withholding order may enter.
2. If the plaintiff should remarry before the marital residence is sold, either party may request a hearing on the issue of child support and the issue of the payments on the mortgage
3. After the marital residence is sold and the closing of title occurs, and the plaintiff is still unmarried, the defendant shall pay to the plaintiff as periodic alimony the sum of $2,500 per month. The payments shall be made in advance on the first CT Page 78 day of the month following the closing of title in reference to the sale of the marital residence, and shall continue until the death of either party, the plaintiff's remarriage or six years from the date of closing, whichever event first occurs. A contingent wage withholding order may enter.
4. The court finds that the defendant owes an arrearage on the pendente lite orders. The defendant owes the plaintiff the sum of $1,000. In addition, the defendant owes two payments on the mortgage. The defendant was previously ordered to keep the mortgage payments no farther than three payments behind, and they are currently five payments in arrears. The defendant is ordered to immediately pay the two mortgage payments. In addition, as part of the periodic order entered pendente lite and continued now until the residence is sold, the defendant is ordered to keep the mortgage payments no farther behind than three payments in arrears so long as the mortgagee permits. If the mortgagee demands additional payments they shall be made by the defendant. It is the intention of this order to require the defendant to make all payments necessary to prevent a foreclosure action before the parties sell their home.
In addition, the defendant shall pay the plaintiff the $1,000 arrearage by February 1, 1991.
5. To secure the defendant's obligation to pay periodic alimony, the defendant shall maintain the plaintiff as irrevocable beneficiary of life insurance having a net benefit in the event of the defendant's death of Two Hundred thousand ($200,000) dollars until the defendant's obligation to pay periodic alimony terminates. If the plaintiff remarries, the defendant shall maintain their son as beneficiary of the insurance until the defendant's obligation to pay child support ceases.
6. Commencing upon the first day of the month following the closing of the sale of the residence of the parties, and continuing until the death, emancipation or the minor child's reaching majority, the defendant shall pay to the plaintiff as child support the sum of One Thousand ($1,000) Dollars per month. A contingent wage withholding order may issue.
7. To secure the defendant's obligation to pay child support, the defendant shall maintain his son as irrevocable beneficiary of life insurance having a net benefit in the event of the death of the defendant of Three Hundred Thousand ($300,000) Dollars for as long as the defendant is obligated to pay child support.
8. The defendant shall maintain medical, hospitalization CT Page 79 and dental insurance for the benefit of his minor son, for as long as the defendant is required to provide child support. Any unreimbursed medical and dental expenses for the minor child shall be shared with the defendant paying two-thirds and the plaintiff one-third. The provisions of 46b-84c of the Connecticut General Statutes shall apply.
9. The defendant shall maintain the plaintiff's children from a prior marriage as beneficiaries of medical, hospitalization and dental insurance, at the defendant's expense, for as long as the defendant is permitted to do so by present medical insurance carrier.
10. The defendant shall cooperate with the plaintiff in the plaintiff's obtaining medical, hospitalization and dental insurance under the defendant's coverage for three years. The defendant shall pay the premiums for the first year, and the plaintiff for the two remaining years.
11. The defendant shall indemnify and hold the plaintiff harmless from any liabilities for taxes, assessment penalties or interest that may result from any joint federal, state or local income tax returns signed by the plaintiff and defendant.
Judgment may enter accordingly.
NOVACK, J.