[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This custodial dispute arising within a dissolution action involves a plaintiff wife, now aged 28, who married at the age of 17, and a defendant husband, now aged 32, who married at the age of 21 in Liege, Belgium, on June 6, 1981, ten years ago. It was the first marriage for each. They have both resided continuously in this state for at least the past twelve months.
There are two minor children born of this marriage:
Antonino Lombardo, born March 30, 1982, now nine years CT Page 9387 of age, and Phillip Lombardo, born January 23, 1985, now six years of age.
Custodial Findings — Pleadings
Each of the competing parents has filed pleadings seeking only sole custody of the minor children.
Thus, the rulings of our Appellate Court in Emerick v. Emerick,5 Conn. App. 649 (1988) and its progeny, combined with the stubborn adversarial stance of each of the competing Lombardo parents, limit this trial court to a choice between sole custody to the mother and sole custody to the father. Our Appellate Court has ruled that joint custody is not permissible unless one of the parties requests it in the pleadings. Emerick v. Emerick, infra, at page 938.
Foreclosed from exercising its discretion, the trial court is limited to the choices selected by parents committed to winning a custodial war, whose interest have become focused on spousal conquest rather than on the welfare of their children.
In an unfortunate merging of parentally focused appellate rulings and parentally focused trial tactics, the court's ability to pursue the best interests of the minor children is limited.
This when Section 46b-56 of the Connecticut General Statutes reads in part:
 "(a) Subject to the provision of 46b-56a, the court may assign the custody of any child to the parents jointly, to either parent or to a third party, according to its best judgment upon the facts of the case and subject to such conditions and limitations as it deems equitable."
 "(b) In making or modifying any order with respect to custody or visitation, the court shall be guided by the best interest of the child. . ."
 46b-56a, subsection (b), reads in part:
 "There shall be a presumption, affecting the burden of proof, that joint custody is in the best interests of a minor child where the parents have agreed to an award of joint custody or so agree in open court at a hearing for the purpose of determining the custody of the minor child or children of the marriage."
It is the statutory language of subsection (b), immediately above, that has lead to the Emerick ruling refocusing joint custodial decisions from the best interests of the child to the pleadings filed by their parents. CT Page 9388
Parent focused formulas can be relaxed to permit child oriented conclusions in appropriate fact situations, without damaging the right of the parents to notice that joint custody will be an option for the court. When parent lose sight of their minor's needs in the midst of an adversarial process, someone should be able to speak for the child. The judge, guided by the evidence, is the traditional guardian of the child's welfare. That welfare is too vital a concern to our community to permit it to be thwarted, either inadvertently or cynically, by the state of the pleadings when the facts of the case indicate that joint custody has already clearly become an option.
In the instant case we have parents who come to court as joint custodians, children who have lived within the concept pendente life, parents whose testimony dealt with joint custody at trial without objecting by counsel, an attorney for the minor children who recommended joint custody, a judge who raised the issue of joint custody before the trial began and, perhaps, a Family relations Counselor who would have endorsed joint custody if questioned and who may well have raised the option of joint custody with the parents months earlier.
It would seem, therefore, that the notice requirement in Emerick, supra, could be met in many ways other than formal pleadings without doing damage to our traditional sense of fairness:
 a. if the Family Relations Counselor discussed the issue of joint custody with the parties during mediation or evaluation, thus putting them on notice more than twenty days before the trial began,
 b. or if that same Family Relations Counselor recommended joint custody in a formal FRC evaluation and report, thus making the issue a reality more than twenty days before the trial began.
 c. or if a pendente lite joint custody order was entered earlier, thus opening the issue more than twenty days before the trial began,
 d. or if the attorney for the minor child raises the joint custody issue with the parties prior to trial, thus putting them on notice more than twenty days before the trial began,
 e. or if other circumstances arose that opened the issue no less than twenty days before the trial began,
f. or if more than one such circumstance is found to exist.
Such findings would enable the trial court to place parents' rights and childrens' rights in better balance. CT Page 9389
To deny the court the right to assign custody jointly when both the facts supporting a joint custody award and the parents' previous awareness of the joint custody issue are clear to the trial court, is to reduce the welfare of the minor child to the status of an automobile or other personal property.
Surely, an issue as central as this can be accommodated through a careful consideration of constructive notice.
Whenever neither party is truly disadvantaged by balancing the child's interest in appropriate parenting with the parents' interest in notice pleadings, constructive notice could be found.
Perhaps the court will find the Practice Book Section 474 requirement that twenty days elapse from the date of filing an amended complaint of cross-complaint is directory rather than mandatory. Formal notice pleadings are not necessarily the prescribed mode or action. Notice is the object, not pleadings. It may well be held that pleadings are a matter of convenience and that actual notice, in whatever form, is the matter of substance. If that proves to be so, the Practice Book directive prescribes what should be done but would not invalidate the action upon a failure to comply if the trial court finds actual notice had been given.
Consider that this limitation of the court's discretion now applies, as well, to the parent who has actively considered joint custody, discussed it with the other spouse, the Family Relations Counselor, the court appointed evaluator and the attorney for the minor child, who is suddenly and tearfully able to modify his or her stance and, as the painful reality of a contested custody trial looms, is willing to accept the more moderate role of joint custodian in the shadow of the courthouse. That parent, under Emerick, faces the same frustration as does this court.
As is typical of pleadings in family matters, this plaintiff wife included a request in her prayer for relief that sought:
 "Such other and further relief as to which she may be entitled."
That omnibus phrase is certainly broad enough to embrace joint custody.
Footnote 10 on page 658 of Emerick, infra, offers a provocative observation:
 "Even if an award of joint custody were statutorily permissible without the agreement of the parties or without the motion of one party for joint custody, it remains doubtful that such an award would withstand CT Page 9390 appellate review absent notice to the parties that the trial court was considering an award of joint custody. See Cappetta v. Cappetta 196 Conn. 10, 15 490 A.2d 996
(1985)."
What is primarily lacking here is a clear opening statement by the trial court that it would consider an award of joint custody. The absence of such a statement grows solely out of the court's awareness of the Emerick rule, infra. If an appellate court were to adopt the recommendations set forth in this memorandum, such a clear opening statement could be made in appropriate cases.
Custodial Findings — Parenting
Since the separation of the parties after their stormy marriage, they have moved into a new phrase of their lives, and each of them now deals maturely with the other as a parent. Unable to function earlier as spouses, they now give every appearance of each having become a competent and mutually respectful mother and father.
They come to this court as pendente lite joint custodians, with the mother having residential custody by order of the court. No visitation schedule was ordered, yet mother has granted father substantial and meaningful access to his sons. She has some mild complaints about his style of fathering, but does not interfere with his frequent visitation. Their father has clearly evolved into a substantial figure in the boys' lives, with the support and consent of their mother. The parents have developed a parenting pattern that is clearly joint.
In her final argument to the court, Attorney for the Minor Child Lynne Jackson recommended that sole custody be awarded to the plaintiff mother. When questioned by the court, she advised that she would recommend joint custody if that choice were available to the court. She spoke of their parental cooperation and communication. Acknowledging that defendant was a "father come lately", she spoke of his "commendable turn around" and observed that he "now does his best to be a fine parent".
Unfortunately, the evaluating Family Relations Counselor testified early in the trial, before the court was aware of the post-separation parental growth and mutual accommodation. The court did not similarly question former Counselor Luella Labbadia about joint custody. She recommended that sole custody of the minor children be awarded to the plaintiff mother.
After careful consideration of all the evidence, this court does not find an award of sole custody to either parent would best promote the welfare of these minor children. Joint custody would be in their best interests. CT Page 9391
Child Support Findings
The court finds plaintiff mother earns a $300 weekly gross income and a net of $241. Husband earns a weekly gross of $520 with a net of $397. He denies earning any overtime. At page 6 of the Guidelines, Custody Adjustments (8), reports:
 "the Commission (for Child Support Guidelines) finds that where the dependant child spends substantial time in the care of each parent, this factor should be considered a reason for deviation from the guidelines."
Findings re: Division of Property
With regard to the criteria set forth in 46b-81 concerning the assignment of property, the court finds plaintiff wife to have more limited vocational skills and employability as well as a more limited opportunity for future acquisition of capital assets and income. The cause for the dissolution is also an issue.
With regard to the cause for the dissolution of the marriage, plaintiff wife speaks of her husband as having physically abused her. She details dates and places.
Husband claims justification by testifying to his belief that his wife has had affairs, but husband offers no third party evidence of any kind and few details.
Husband claims justification by suggesting to the evaluating family relations counselor that his wife is a drug user, but husband offers no third party evidence of any kind and few details. His wife voluntarily takes a drug test within forty-eight hours of the accusation and she is found to be drug free.
Husband claims justification by testifying that his wife was flirtatious and sexually provocative toward other men, but husband offers no third party evidence of any kind and few details.
Husband accuses her of stealing from her customers when she cleans their home, but husband offers no third party evidence of any kind and few details.
The essence of Mrs. Lombardo's claims of her husband's physical abuse were verified by the testimony of Mr. Lombardo himself. Mr. Lombardo's attempts to justify his abuse seemed to be noting more than rhetoric. Verification was lacking. Clearly, plaintiff wife is the more credible of the two. CT Page 9392
This court finds that the husband's previous abusive behavior is the cause of the breakdown of this marriage. It finds, further, that this cause of the dissolution is not relevant in determining the best interests of the children under the circumstances of this case.
ORDERS
Having reviewed the evidence and the sworn financial affidavits of each party in the context of the required considerations set forth; in Title 46b, Chapter 815j of the Connecticut General Statutes, a finding shall enter that the marriage has broken down irretrievably, a decree of dissolution shall enter and the following orders shall apply:
1. CUSTODY
Plaintiff mother shall have sole custody of the minor children.
2. ACCESS
a. Defendant father shall have generous access to the minor children.
b. Generous access shall include, but not be limited to the following:
 i. The first, third and fourth weekend of every month from Friday at 5 pm to Sunday at 7 pm. If a school holiday falls on a Monday following father's weekend, access shall be extended to Monday evening.
 ii. Every Tuesday and Thursday from 5 pm (earlier if father is able to leave work earlier) to 7 pm.
 iii. Two weeks of uninterrupted vacation during July or August. Mother shall have a similar uninterrupted two week period during the summer months. Father's dates are to be chosen by him, and communicated in writing to mother no less than sixty days in advance.
 iv. Parents shall alternate Memorial Day, Labor Day, Thanksgiving, Christmas Eve and Christmas Day annually. Mother will establish the alternating schedule.
 v. Parents shall alternate the December, February and April school vacations, or their equivalents. Mother will establish the alternating schedule.
 vi. This court specifically empowers the parties to vary and portion of the access schedule in any mutually agreeable manner. CT Page 9393
 viii. All communication regarding the access schedule is to be conducted solely between the adults.
3. CHILD SUPPORT
a. Given the time the children are to be in the care of their father, this court finds a moderate deviation from the Guidelines to be equitable and appropriate.
b. The Guidelines, if no moderation had been found to be appropriate, suggests $163 a week from the defendant father.
c. Defendant father shall pay plaintiff mother $130 a week as child support, allocated $100 for Phillip, $30 for Antonino.
4. MEDICAL INSURANCE
a. Defendant father shall provide medical insurance for the benefit of the minor children.
b. All uninsured medical, dental, optical, prescription, eye care mental health and all other health related expenses shall be divided equally between the parents.
c. C.G.S. 46b-84(c) shall apply.
5. LIFE INSURANCE
a. Defendant father shall maintain $50,000 of insurance on his life for each of the minor children, naming the plaintiff mother as irrevocable beneficiary thereof, until both children are eighteen years of age or are earlier emancipated, said sum being intended for the benefit of the children.
b. Defendant shall furnish plaintiff, on her request, not more than once each calendar year, proof satisfactory to her that said life insurance exists in the specified amount and that the beneficiaries are as required by this order.
c. If $100,000 is not received by the plaintiff at the time of defendant's death, the unpaid balance shall constitute a charge against the defendant's estate and shall become an indebtedness of the estate in favor of the plaintiff.
6. TAX EXEMPTIONS
a. Defendant will be entitled to claim Antonino as his tax exemption, provided he is current with all the payments called for in these orders as they may be modified from time to time. CT Page 9394
b. Plaintiff will be entitled to claim Phillip as her tax exemption.
c. The parties will sign all documents necessary to effectuate the award of tax exemptions.
7. ALIMONY
a. Defendant husband shall pay plaintiff wife alimony of $1 a year for five years from the date hereof.
b. Said alimony shall be non-modifiable as to term and shall be modifiable as to amount only in the event of defendant mother's medically certified inability to pursue employment.
c. Alimony shall terminate upon the death of either party or defendant's remarriage.
8. 47 RIVERSIDE ROAD, SANDY HOOK, CONNECTICUT
a. Defendant husband shall forthwith transfer to plaintiff wife by quit claim deed all of his interest in the family home in sandy Hook.
b. Plaintiff wife shall immediately list the property at fair market value and pursue the sale of the premises.
c. Defendant father shall do nothing to impede the sale of the premises.
d. Until the date of transfer, defendant father shall continue to have exclusive use of the premises and shall pay all the mortgages, taxes, costs and charges thereon.
e. At the time of sale, any excessive payments made by defendant shall be refunded to him when closing adjustments are calculated.
f. After deducting the mortgage balance, the seller's attorney's fees, broker's commissions and all customary closing costs, the proceeds shall be divided 65% to plaintiff wife, 35% to defendant husband.
g. Proceeds shall not be distributed to the parties until the full fees of the attorney for the minor child have been paid therefrom.
9. PERSONAL PROPERTY
Plaintiff wife has proposed as follows, and the court concurs:
a. Defendant husband shall retain the furniture and furnishings in the family home with the exception of the plaintiff wife's clothing and CT Page 9395 personal property.
b. The following items shall be defendant's property:
1. Jewelry: Husband's gold wedding band, engagement ring with diamond, 14 carat gold ring with one-half carat diamonds, gold ring, initial ring, gold watch, 18 carat gold chain with cross (belonging to son) and two pairs of earrings originally belonging to defendant's mother.
2. All exercise equipment.
3. All tools, autobody, mechanical and garden.
4. Compressor — spray gun
5. Lawn tractor, stereo (given to older son), 19 inch Quasar television set and washer and dryer.
11. AUTOMOBILES
a. Defendant shall have title to the 1990 Mercury Sable.
b. Plaintiff shall have title to the 1985 Chevrolet Blazer.
c. Each party shall execute any documents necessary to effectuate said orders.
12. OTHER ASSETS
a. One half of the $11,000 in funds now being held in a bank account by Attorney Alan Bleiman, together with one half of the interest earned thereon, shall be forthwith transfered to plaintiff wife.
b. Plaintiff wife shall also receive forthwith $1250, representing one half of the funds taken earlier by defendant husband.
13. ATTORNEYS' FEES
a. Each of the parties shall be responsible for the payment of their own attorney's fees.
b. The court finds the $2158.75 bill of Lynne D. Jackson, the Attorney for the Minor Children, to be a fair and equitable one.
c. Each of the parties is to pay one half of Attorney Jackson's full bill simultaneously with the receipt of funds from the sale of the family home. CT Page 9396
14. DEBTS
a. Each of the parties shall be responsible for the payment of those liabilities listed on their sworn financial affidavits and shall hold the other harmless therefrom.
15. CHANGE OF NAME
Plaintiff's maiden name is hereby restored. She shall henceforth be known as Antonina Rosato.
16. NEGOTIATION
a. The court recognizes that the parties may have mutual preferences that have not been revealed to the court during the trial and which the court may have inadvertently thwarted. Final divorce terms established by the parties themselves are historically more comfortable for the parties to live with and abide by. Therefore, the court empowers the parties to confer and to seek mutually acceptable variations of the court's orders.
b. Any such mutually negotiated modifications are to be submitted directly to the undersigned in written form, signed by all three counsel, the plaintiff and the defendant no later than thirty days after this judgment, without costs and without the need to establish a substantial change of circumstances
c. Beyond that date, or before any other court, modifications shall be by the traditional route and must meet all the more formal requirements.
17. APPEAL
All foregoing orders with respect to custody and visitation shall stand and operate as interim orders of this court during the pendency of any appeal.
Joseph L. Steinberg, Judge. CT Page 9397