[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This action for dissolution of marriage was returned to this court December 22, 1992. After hearing the matter and applying the standard of proof by a preponderance of the evidence, the court makes the following findings and orders based on the credible evidence presented.
The parties were intermarried in West Haven, Connecticut, June 9, 1989, and all statutory residency requirements have been met. There is one minor child issue of the marriage, Raymond E. Gerosa, born July 25, 1991, and it is the child's physical condition and consequent needs which are at the core of this limited contested[1] case. His condition can best be described by quoting from his physician's letter dated January 26, 1994 (Defendant's Exhibit 1). In that document, Dr. Carol Rosen of Yale University School of Medicine, Department of Pediatrics, Section of Respiratory Medicine wrote:
 Raymond Gerosa is a two year old little boy who has been under my care for chronic respiratory problems. His current respiratory problems include:
 Tracheostomy for upper airway obstruction Reactive airways disease (asthma) Chronic interstitial infiltrates
 His current respiratory care regimen includes:
 1) trach mist via compressor for night time sleep period CT Page 2626
 2) trach "artificial nose" for humidification during the daytime
3) tracheal suctioning as needed
 4) tracheostomy change every two weeks or as needed for emergency upper airway obstruction
 5) instillation of saline drops (1 cc) as needed for thick trach secretions
 6) albuterol aerosol treatments via nebulizer with trach mask or via MDI through tracheostomy up to every 4 hours as needed for wheezing
 7) monitoring respiratory status — rate, comfort, retractions, wheeze, color
 8) use of an ambu bag for tracheal ventilation if needed emergently
The child resides with the mother who is employed as a nurse's aide at a New Haven hospital. When the mother is at work, Raymond is attended by nurses and the maternal grandmother. He was hospitalized for over a year and a half after birth, although the family has not amassed large medical bills, thanks in large part to the mother's employer, her medical insurance coverage, and her money-management skills. It was during the hospitalization that the parties separated, the plaintiff having removed himself from the marital home. It should also be noted that Raymond suffered from kidney disease which resulted in the removal of one of his kidneys.
At the time of the marriage and up until recently, the plaintiff was employed as a security guard. He has since obtained employment as an officer with the Connecticut Department of Corrections and is currently commuting to the Bridgeport correctional facility from Wallingford.
It is clear the health of the minor child Raymond put enormous stress on the marriage and on the defendant, the child's primary caregiver; and although the marriage was of relatively CT Page 2627 short duration, its long-term ramifications are incalculable. Not surprisingly, the issues in controversy are directly related to Raymond's health needs. The plaintiff seeks an order for joint custody while the defendant prays for sole custody. Visitation is an issue in that the defendant feels Raymond might not receive proper medical attention while visiting with the plaintiff who has yet to participate in the full panoply of care necessary to meet Raymond's special needs. Overnight visitation cannot be accomplished until the plaintiff acquires some of the essential equipment for Raymond's care, and the paternal grandfather has intervened to obtain visitation. Finally, the defendant urges the court to exceed the child support guidelines because of Raymond's special needs. The testimony indicated the child's long-term prognosis is unknown. Based on the provisions of 46b- 81-84, the court orders as follows.
Initially, the court will find the plaintiff is in arrears on the prior orders of this court in the amount of $1,035, which sum is to be paid to the defendant at the rate of $15.00 per week.
Both parties are ordered to participate in the parenting education program pursuant to P.A. 93-319.
The parties are to provide health insurance for the benefit of the minor child so long as the same is available to them through their employers. All unreimbursed medical (including sterile and saline solutions), dental, optical, orthodontic and prescription drug expenses for the minor child are to be shared equally by the parties. And each of the parties is ordered to name the minor child as irrevocable beneficiary on life insurance provided by their respective employers during the term of his minority.
Not shown on the defendant's financial affidavit, but elicited in testimony is the fact that the defendant receives approximately $400 per month is social security benefits for the minor child. She had been receiving these benefits prior to the entry of pendente lite orders in May 1993, and plaintiff is seeking credit for overpayment of child support based on application of the child support guidelines to defendant's affidavit of May 1993 and the income it would have shown with the social security benefits, or $67 per week for 39 weeks, or $2,613. However, the court will note he withdrew one-half of the parties' joint bank account when he left. The total withdrawn was $4,250, CT Page 2628 and the account itself was established with the proceeds from a settlement the defendant received from a negligence case. The difference between the overpayment in support and the withdrawal from the joint account is $1,637, which the plaintiff is to pay to the defendant as lump sum property settlement no later than June 15, 1994.
No alimony is awarded to either party due to the duration of the marriage, the income and employment histories of the parties and their ages, health and education.
As the conflicting requests for custody and joint custody have not been resolved, the court will order conciliation on this issue pursuant to C.G.S. 46b-56a(c), and the parties are to split the costs of the same. Emerick v. Emerick, 5 Conn. App. 649
(1985). In the interim, the pendente lite order that custody of the minor child be awarded to the defendant wife shall continue until further order of this court.
There was no evidence presented which would lead the court to conclude the plaintiff could not learn the procedures necessary to ensure Raymond's health and comfort while visiting. At the hearing, however, it was clear the plaintiff has had but minimal participation in these procedures, and the court will make off-premises visitation contingent upon his acquiring and satisfactorily demonstrating these skills.
The plaintiff shall have visitation on the defendant's residence every other Saturday from 8:30 a.m. to 2:30 p.m., every other Sunday (on alternate weeks from Saturday visitation) from 8:30 a.m. to 2:30 p.m., and each Wednesday from 5 p.m. to 8 p.m. Immediately after the plaintiff has demonstrated to the satisfaction of the child's nurse, as designated by Dr. Carol Rosen, his ability to perform the caretaking tasks set forth in her letter of January 26, 1994, he shall have daytime visitation away from the defendant's residence one day per week from 8:30 a.m. to 7 p.m. and each Wednesday from 5 p.m. to 8 p.m.
After one month of daytime visitation per the above order, visitation shall include the following schedule:
— Every other weekend from Friday 5:00 p.m. until Sunday at 4:00 p.m. If the plaintiff is required to work during weekend visitation, the minor child is to be cared for by his grandparents or such other third party as is mutually acceptable to the CT Page 2629 parties.
— Each Wednesday from 5:00 p.m. to 8:00 p.m.
— Alternate major holidays (including the minor child's birthday) from 8:30 a.m. to 7:00 p.m.
— Father's Day and plaintiff's birthday.
— Summer vacation consisting of one week during the months of June, July or August, and one week during the remainder of the year during the plaintiff's vacation.
The parties prepared a worksheet, and, using the child support guidelines, the plaintiff should be paying $129 per week. Raymond's health needs are extraordinary. His tracheostomy and asthma result in rather intensive on-going medical care, including the application of moisturizing creams to the tracheostomy area, constant monitoring of Raymond's breathing, and the maintenance of a medically safe environment to minimize the risk of infection. In the past, special clothing and food have been mandated although those needs seem to have normalized as the child has grown older. At least some of the medical equipment needed for Raymond's care is portable and might be transported by the father to his home; it is clear he will need to obtain this equipment before visitation off the mother's premises can be effected. The court must weigh the expenses involved in the plaintiff securing this equipment with the defendant's extraordinary care needs and in doing so concludes the support guidelines should be exceeded. Accordingly, the plaintiff is ordered to pay the sum of $155 per week as support which, together with the weekly payment ordered on the arrearage, results in a total weekly payment of $170 effective February 4, 1994.
The intervening grandfather may have visitation with Raymond on the defendant's premises for up to two hours once each week.
The marriage of the parties is hereby dissolved on grounds of irretrievable breakdown, and there is no prospect of reconciliation.
Stanley, J.