[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The parties to this action were intermarried on August 30, 1991 at Waterbury Connecticut.
They have resided in Connecticut for at least one year next before the institution of this action. The court has the requisite jurisdiction to proceed to judgment in this case. CT Page 5311
There is one child issue of this marriage, Stephanie Spreda, born September 25, 1991.
In her complaint the plaintiff prayed for a dissolution of marriage on the ground of irretrievable breakdown. She also prayed for custody of the minor child, for an order of child support, for alimony, for an assignment of property and for such other relief as may be equitable.
The defendant filed and answer to the complaint in which he admitted all the allegations in the plaintiff's complaint. He also file a cross-complaint in which he alleged that the marriage had broken down irretrievably and prayed for a dissolution of marriage, sole custody of the minor child, child support, an equitable division of the parties' assets and for such other relief as may be equitable.
The court heard the evidence and testimony offered by the parties over a several day trial. Having considered that evidence and testimony and having considered the provisions of Sections46b-81, 46b-82, 46b-84 and 46b-56, et seq., as well as other relevant statutes, the court makes the following findings and orders.
The allegation that the marriage of the parties has broken down irretrievably has been established and the marriage of the parties is dissolved on that ground.
The plaintiff was born on August 9, 1973 and the defendant was born on May 11, 1966. Each of them enjoys generally good health. Each of them graduated from high school. The defendant attended college for two years. The plaintiff is a licensed emergency medical technician.
At the time of trial the plaintiff filed a financial affidavit which indicated that her gross weekly income from employment was $382.55 and her net weekly income was $280.87. The defendant report gross weekly income in the amount of $735.00, including weekly commissions, and a net weekly income of $489.00. When his $26.00 per week 401(k) contribution is added back, his total net weekly income is found to be $515.00 per week. The combined net weekly income of the parents is $795.87. The support obligation for the minor child is $195.00 per week. The CT Page 5312 plaintiff's prorated share of the support obligation is found to be $68.25 per week and the defendant's prorated share is found to be $126.75. Those obligations are subject to further modification taking into consideration shared parenting considerations.
At the time of trial the parties entered into a stipulated agreement concerning alimony, property orders and a number of miscellaneous rights and obligations. That agreement is the basis for many of the courts orders set forth herein below.
The parties could not agree as to the issues of child custody and child support. In fact, the greater part of the evidence and testimony offered at trial related to those two issues.
The child, Stephanie, was born within the first month of the marriage. The plaintiff stayed home to care for the child for the first two years of her life. At that time the defendant worked from 8:00a.m. to 4:00 p.m. five and often six days per week.
When the plaintiff did resume her employment she worked between 20 and 30 hours per week and cared for the child the balance of the time. She also sustained an injury which caused her to miss between six and eight months employment.
As the child grew, disputes arose concerning lack of communication between the parties. The plaintiff testified that the defendant frequently exhibited an inability to care for the child ranging from poor supervision to poor judgment concerning her health and safety, usually said to occur when the plaintiff was at work.
The plaintiff removed herself and the child from the marital home in July 1996.
The plaintiff testified that in the time since she and the defendant have been separated, their inability to communicate about anything — especially regarding the child — has seriously increased to the point where it has become futile. As evidence of that fact, she testified that the defendant has frequently videotaped the interaction between the parties during episodes when the child was exchanged at visitation times. She further testified that the defendant has continued to neglect the child's medical and health needs and that he has taken her with him in late evening on a number of occasions while he made visits to gas stations as part of his employment responsibilities. CT Page 5313
The defendant offered evidence and testimony to substantiate his concern that the child is not properly cared for by the plaintiff. He cited the practice of mother allowing the child to sleep in the same bedroom with the son of her current significant other. He also offered testimony that throughout the child's early years he and not the plaintiff was the primary care giver as he cared for the child when she came home from daycare every evening starting at approximately 4:30p.m. while the plaintiff was out either working, attending classes or "socializing."
He did agree that since the parties have been separated the child custody/visitation issues have grown worse rather than better.
Each of the parties offered testimony from other witnesses to corroborated their version of the facts regarding child custody issues. It is not entirely clear to the court which of the parties, if either, has been accurate and truthful in recounting the many faults the other has regarding parenting skills. It is clear from the evidence and testimony that there are irreconcilable differences between the parties on every level when it comes to their daughter. They simply cannot trust, believe, communicate or cooperate with each other.
Connecticut General Statutes 46b-56(b) provides that the court, in making any order with respect to custody or visitation shall be guided by the best interests of the child. In doing so, the court considers the recommendations of professionals and the rights of parents, but it is ultimately concerned with the best interests of the child. Emerick vs. Emerick 5 Conn. App. 649, 661
(1985).
The family relations officer and the guardian ad litem for the minor child both recommended that the court award sole legal custody of the minor child to the plaintiff and it was clear from their reports that the inability of the parents to have any meaningful and responsible communication was a major factor in their decisions.
 ORDERS
I. CHILD CUSTODY AND VISITATION
The court orders that the plaintiff shall have sole CT Page 5314 legal custody of the minor child and that the defendant shall have visitation as set forth in the pendente lite visitation orders.
II. CHILD SUPPORT
Based upon the financial affidavits filed by the parties at the time of trial, the court orders that the defendant shall pay to the plaintiff the sum of $76.00 per week as support for the minor child.
The court finds that said amount is consistent with the child support guidelines as recommended with shared parenting responsibilities factored in.
THE FOLLOWING ORDERS ARE ENTERED PURSUANT TO THE STIPULATEDAGREEMENT OF THE PARTIES FILED AT THE TIME OF TRIAL.
III. DISSOLUTION OF MARRIAGE
Having found that the marriage of the parties has broken down irretrievably, the court hereby decrees that the marriage is dissolved and the parties are single and unmarried.
IV. ALIMONY
The court orders that neither party pay periodic alimony to the other pursuant to their agreement.
V. BY WAY OF REAL PROPERTY DISTRIBUTION
The defendant shall retain exclusive use and possession of the marital residence located at 35 Mountain Laurel Drive in Waterbury, Connecticut. The plaintiff shall quit claim all of her right, title and interest in the said marital residence to the defendant. The defendant shall assume and pay the mortgage, taxes and insurance holding the plaintiff harmless therefrom. The defendant shall refinance the current mortgage within eighteen months from the date of this judgment in order to release the plaintiff's name from the mortgage. No funds shall be paid to the plaintiff from any equity in the marital residence.
In the event that the defendant does not refinance the existing mortgage as provided herein, the property shall be listed for sale, unless otherwise agreed by the parties. CT Page 5315
VI. BY WAY OF PERSONAL PROPERTY DISTRIBUTION A. Automobiles
The plaintiff shall keep and retain title and possession of and to the 1987 Chevy Camero and the defendant shall waive any claim to same.
The defendant title and possession of and to the 1992 Dodge Caravan and the 1979 GMC pick up truck, and the plaintiff shall waive any claim to same.
Both parties shall pay all applicable taxes due on said vehicles, both past and present.
 B. Defendant's 401(k) Plan
The defendant shall keep his entire 401(k) plan, in the approximate amount [at the time of trial] of $800.00, and the plaintiff shall waive any right or claim thereto.
 C. Bank Accounts
The parties shall each retain ownership of their respective bank accounts as listed in their financial affidavits and each shall waive any claim to the other's account(s).
 D. Savings Bonds
The defendant shall maintain possession of the savings bonds in the name of the defendant and/or the minor child, for the future education, or other agreed upon purpose, of the minor child.
VII. MISCELLANEOUS ORDERS A. Medical Insurance
The parties are to continue to provide medical insurance for the minor child as available through their respective places of employment. The plaintiff and the defendant shall share the cost of any past, present and future unreimbursed medical, dental, orthodontic, optical, psychiatric, psychological or counseling expenses incurred for the child. The provisions of CT Page 5316 Connecticut General Statute Section 46b-84d shall be incorporated by reference.
The parties shall each be responsible for their own medical insurance and the cost thereof.
 B. Liabilities
Each party shall be responsible to pay their debts as set forth on their respective financial affidavits, and shall hold each other harmless and shall indemnify each other from their failure to pay said debts and obligations or their share of said debts and obligations as they become due and payable, except for the Chase Bank card which at the time of trial had a present balance of approximately $4,400.00 of which the plaintiff shall pay $3,500.00 and the defendant shall pay $900.00. The defendant shall have paid a lump sum payment of $900.00 on or before October 31, 1998 directly to the creditor. The billing statement shall be directed to the plaintiff and she shall make and keep current the monthly payment until the balance is paid in full. The plaintiff shall have begun to make the monthly payments due for August 20, 1998. The plaintiff shall pay off the entire balance within five (5) years of the date of this judgment.
 C. Other Personal Property
The parties shall divide the remaining personal property not heretofore mentioned in these orders to their mutual satisfaction or mediate any dispute through the Office of Family Relations.
By the Court,
Joseph W. Doherty Judge