## CLAUDIA EMERICK *v.* ROGER EMERICK
### (2941)

DUPONT, C. J., HULL and SPALLONE, Js.

Argued October 3—decision released December 24, 1985

*Lloyd Frauenglass,* for the appellant-appellee (plaintiff).

*Roger Emerick,* pro se, the appellee-appellant (defendant).

*Richard W. Dyer,* for the minor child.

DUPONT, C. J. In this appeal by the plaintiff wife and cross appeal by the defendant husband from a judgment dissolving their marriage, numerous claims of error are made. The issues are whether the trial court erred in

rendering orders providing for (1) a prospective award of joint custody of the parties' minor child when neither party had sought joint custody, (2) an automatic change of custody if the minor child of the parties were permanently removed from Connecticut, (3) financial awards, division of property and counsel fees, and (4) a prohibition preventing both parties from bathing or sleeping with the child, or spanking her.[1]

The trial court found that the plaintiff and the defendant had been married for five years, and had one minor child who was residing with the plaintiff at the time of the dissolution of the marriage. It further found that the plaintiff earned approximately $19,000 per year,

[1] The plaintiff appeals from that portion of the judgment relating to child custody and automatic change of custody as well as orders relating to the discipline and hygiene of the minor child. The defendant cross appeals as to numerous orders contained in the judgment and as to postjudgment orders. The defendant has briefed thirty-three issues, if the issues are charitably counted in favor of tallying the lowest number. One of them, denial of the defendant's motions for articulation by the trial court, is not considered because of the defendant's failure to seek review by this court pursuant to Practice Book § 3108. The defendant filed a motion requesting this court to review its denial of relief to the *plaintiff* who had moved in this court to require the trial court to articulate further. Sixteen issues, not appearing in his amended preliminary statement of issues, are not considered. *Presutti* v. *Presutti*, 181 Conn. 622, 626, 436 A.2d 299 (1980); *Barrett* v. *Central Vermont Railway, Inc.*, 2 Conn. App. 530, 535–36, 480 A.2d 589 (1984). Others are not considered, being deemed collateral to, or extraneous to, the claims of law upon which this decision rests. See *Guss* v. *Guss,* 1 Conn. App. 356, 359–60, 472 A.2d 790 (1984). The parties have filed six briefs and reply briefs, including a brief of counsel for the minor child of the parties. Two of the issues discussed in the brief of counsel for the child are not considered because they relate to the rebuttal of the defendant's claims that almost every party and officer of the court engaged in malpractice or deception which claims are unrelated to the errors of law asserted. A claim that the court erred in excusing the plaintiff from attending postjudgment court hearings is briefed by both parties and claimed in the defendant's amended preliminary statement of issues but is not considered because of the insufficiency of the record provided. Another claim, that the trial court should not have ordered the defendant to desist from contact with the plaintiff's employer, relatives, friends and associates, is also not considered. See Practice Book §§ 3082, 3108. In view of this court's decision, it is unnecessary to address the claimed error of that portion of the judgment which ordered the defendant to participate in and complete separate psychological counseling before joint custody of the child would be awarded.

that the defendant earned approximately $30,000 per year, and that both parties had worked outside of the home during their marriage. The principal asset of the marriage was the family home which the court found to have an equity value of $100,000. In its view, "[b]oth the plaintiff and the defendant are thoughtful, caring, loving, competent parents and both have a great deal to offer their daughter. The child loves them both but primarily identifies with and is attached to her mother." The court also found that the plaintiff was prepared to leave the state, precluding any meaningful relationship between the child and the defendant, and that the defendant displayed an "obsessive, single-minded, apparently consuming passion to control, possess and dominate his wife and daughter's lives and has interminably and mercilessly rummaged and meddled with his wife's privacy throughout the course of the dissolution action." The court, in addition, found that the permanent removal of the child from Connecticut would not be in her best interests.

On the basis of these findings of fact, the trial court specifically did not order periodic alimony but gave the plaintiff lump sum alimony of $22,180, with interest at 9 percent per annum, to be evidenced by the defendant's promissory note and mortgage on the marital home. The note was to be paid at the rate of $350 per month, with the remaining principal and interest due thereon to be paid in full upon refinancing, the defendant's death, or the passage of five years. Various items of personalty were awarded to both parties. The defendant was ordered to pay $115 per week as child support, except if the minor child resided with the defendant, in which case the amount was to be lowered to $85 per week. The defendant was to maintain medical insurance, but, to the extent it was insufficient, both parties were to pay one half of unreimbursed expenses. The court awarded counsel fees to the plaintiff, and counsel fees to the child's counsel to be paid one-third by the plaintiff and two-thirds by the defendant.

The court also ordered both parties to participate in psychological counselling to help establish communication between them, as prescribed by the family relations division of the court, and ordered the defendant to participate in a separate program to ameloriate his present tendencies of domination over both the plaintiff and his daughter. It further ordered that upon "satisfactory participation and completion of . . . psychological counseling, as measured by marked improvement in the comportment of the Defendant" that joint custody be awarded to the parties approximately one and one-half years after the judgment date, with interim custody to be with the plaintiff, subject to the reasonable visitation rights of the defendant.[2] These rights of visitation were elaborately enunciated and were to remain the same, whether custody was joint or sole. The court also ordered that "[i]n the event of . . . a removal [of the child from Connecticut by either

[2] Joint custody of the child was never awarded to the parties nor was any hearing ever held to establish the prerequisites for it. The plaintiff and her daughter had vanished from this jurisidiction by the time of oral argument in this court. Both the plaintiff, in her claim for relief in her complaint, and the defendant, in his claim for relief in his cross complaint, sought sole custody of their child. On October 4, 1983, the defendant filed a "Claim for Relief" requesting that "[t]he parties have joint custody of the minor child . . . " with the child to live with him and the plaintiff to have specific visitation as outlined by him. He also sought a number of other orders, including the surrendering of the passports of the plaintiff and the child to the court, the payment by the plaintiff to him of $5000 within one month if a dog, "Buckwheat," had been put to death, payment by the plaintiff to him of $100,000 within two months, $20,000 "to partially cover costs incurred during divorce," and $95 per week in support from the plaintiff. On October 31, 1983, he filed a "Claim for Relief-Amendment I" in which he sought additional detailed orders relating to attorney's fees and "parental kidnapping prevention." These "claims for relief" are proposals for specific orders made on the eve of trial for the guidance of the court. The claim for relief by a defendant in a dissolution action is contained within the answer and cross complaint. Practice Book § 456. The defendant never amended his claim for relief to seek joint custody. The defendant's statement of issues on appeal claims error in the assignment of custody. The plaintiff's statement of issues on appeal claims error in the award of joint custody when both parties sought sole custody. In this case, neither party sought joint custody or moved for joint custody pursuant to General Statutes § 46b-56a (c).

party], custody, without further order . . . shall vest immediately and solely in the remaining parent."[3] Another order of the court prohibited either parent from bathing with, sleeping with, or spanking the child.

## I

The trial court's judgment awarding joint custody of the minor child to the parties, if the condition of behavioral modification of the defendant were met in the future, is claimed to be error by the plaintiff because neither party sought or agreed to joint custody. Assuming that the court, without motion by either party or without agreement of the parties, may award joint custody, the plaintiff claims that, on the facts of this case, it was error to conclude that joint custody was in the best interests of the minor child.

Embodied in the issue of whether the court, without motion by either party or without agreement of the parties, may order joint custody is the issue of whether to do so denied the plaintiff due process because it deprived her of notice and of an opportunity to be heard on the question.

In this case, both parties sought sole custody of the child, but neither sought joint custody. Counsel for the child and the family relations officer recommended that custody be awarded to the plaintiff. The trial court was not bound to accept the expert opinion of the family relations officer or the opinion of the minor child's counsel. *Yontef* v. *Yontef,* 185 Conn. 275, 281, 440 A.2d 899 (1981). The question, however, is whether the trial court was prohibited from rendering a sua sponte award of future joint custody upon a present finding that joint custody was in the best interest of the child, given the fulfillment of a specific condition. Two statutes are involved in the determination of whether a trial court

[3] The court's order obviously relates to the *permanent* removal of the child from Connecticut because its orders relating to visitation expressly allow removal by one parent during periods when there is no interference with the visitation rights of the other parent.

may award joint custody upon its unilateral determination that the best interests of the child dictate it.[4]

General Statutes § 46b-56 (a) provides: "Subject to the provisions of section 46b-56a, the court may assign the custody of any child to the parents jointly . . . according to its best judgment upon the facts of the case and subject to such conditions and limitations as it deems equitable." The second statute, General Statutes § 46b-56a, is entitled "Joint custody. Definition. Presumption. Conciliation"[5] and provides an amplification of General Statutes § 46b-56 (a).

On two occasions, the Connecticut Supreme Court has dealt with certain aspects of the propriety of joint custody awards. In *Strohmeyer* v. *Strohmeyer,* 183 Conn. 353, 439 A.2d 367 (1981), the court held that it was a denial of the due process requirements of fair notice and a reasonable opportunity to be heard to award joint custody when one parent had not sought custody at all, and the other had no knowledge that joint custody was being considered by the court. The

---

[4] General Statutes § 46b-56 (b) provides in part: "In making . . . any order with respect to custody or visitation, the court shall be guided by the best interests of the child . . . . "

[5] General Statutes § 46b-56a provides: "(a) For the purposes of this section, joint custody means an order awarding legal custody of the minor child to both parents, providing for joint decision-making by the parents and providing that physical custody shall be shared by the parents in such a way as to assure the child of continuing contact with both parents. The court may award joint legal custody without awarding joint physical custody where the parents have agreed to merely joint legal custody.

"(b) There shall be a presumption, affecting the burden of proof, that joint custody is in the best interests of a minor child where the parents have agreed to an award of joint custody or so agree in open court at a hearing for the purpose of determining the custody of the minor child or children of the marriage. If the court declines to enter an order awarding joint custody pursuant to this subsection, the court shall state in its decision the reasons for denial of an award of joint custody.

"(c) If only one parent seeks an order of joint custody upon a motion duly made, the court may order both parties to submit to conciliation at their own expense with the costs of such conciliation to be borne by the parties as the court directs according to each party's ability to pay."

case, however, was decided before the passage of General Statutes § 46b-56a and prior to the amendment of General Statutes § 46b-56 (a), which made the award of joint custody subject to the provisions of General Statutes § 46b-56a.

The *Strohmeyer* court remanded the case for further proceedings and made it clear that, under the then existing legislation, a trial court might inquire into the feasibility of joint custody even when one party has not contested custody in the other, as long as due process requirements are satisfied.[6] The question to be decided in the present case is whether, after the 1981 passage of General Statutes § 46b-56a, the *Strohmeyer* holding remains intact.

Joint custody is an increasingly favored viable alternative to sole custody in one parent, with reasonable rights of visitation in the other, when the parents have agreed to it. Whether joint custody, without the agreement of both parents, is a workable alternative to the goal of preserving a dual parental relationship with a child outside the former marital relationship is a subject of debate. See annot., "Propriety of Awarding Joint Custody of Children," 17 A.L.R.4th 1013 (1982); 2 McCahey, Child Custody & Visitation Law and Practice (1983) ch. 13; Novinson, Post Divorce Visitation, 1983 Ill. L. Rev. 121; note, "Developments in the Law—The Constitution and the Family," 93 Harv. L. Rev. 1156 (1980); note, "Joint Custody Awards: Toward the Development of Judicial Standards," 48 Fordham L. Rev. 105 (1979).

Joint custody awards when workable have undoubted societal and psychological merit. Judicial awards of joint custody of children are decisionally grounded upon

---

[6] When *Strohmeyer* v. *Strohmeyer,* 183 Conn. 353, 440 A.2d 899 (1981) was decided, General Statutes § 46b-56 (a) allowed the court to assign custody to "the parents jointly," without any other statutory guidance specifically related to joint custody.

express statutory provisions or general statutory authority to award custody in the best interest of the child. There are two types of express statutory authority. One type of statute simply states that joint custody may be awarded, and the other type of statute defines the term and explicates the guidelines for such an award, sometimes creating a presumption in its favor where the parties have agreed to it. Statutes are generally silent as to whether a court may, sua sponte, grant an award of joint custody. McCahey, supra, § 13.07 [2].[7]

Our statutes providing for awards of joint custody are modeled after the California statutes on the same subject.[8] See remarks of Representative Robert Farr, 24 H. Proc., Pt. 20, 1981 Sess., pp. 6769–70. General Statutes § 46b-56a (a) defines joint custody but does not do so in the same terms as the California statutes. Since our statute was intended to track California's statute, we interpret our definition as including joint legal custody, meaning joint decision making, and joint physical custody, meaning a sharing of continued contact with both parents. Further, joint physical custody is

[7] The state of Michigan has the only statute of which this court is aware which mandates that in custody disputes between parents, the parents must be advised of the possibility of joint custody, apparently allowing such an award, sua sponte, thereafter. Mich. Comp. Law Ann. § 25.312 (6a) (1). The courts of at least one state have interpreted a general statute allowing courts to make such custody orders as the circumstances of the case make reasonable and just, to allow a sua sponte determination of joint custody, provided the record supports that determination, even if the parties had no notice, although notice is preferable. *Beck* v. *Beck,* 86 N.J. 480, 432 A.2d 63 (1981). The *Beck* court makes it clear that even if no party seeks joint custody, it is a possible award as long as both parents are willing to care for their children. *Seymour* v. *Seymour,* 180 Conn. 705, 433 A.2d 1005 (1980), decided before the passage of General Statutes § 46b-56a, provides a judicial clue that joint custody is not an appropriate award, even assuming notice to the parties, where the parties have failed to make it work, although both are fit and capable of being sole custodians.

[8] California Civil Code §§ 4600 through 4608. The Connecticut statutes are not, however, duplicates of California's statutes.

severable from joint legal custody.[9] The last sentence of the definitional subsection provides: "The court may award joint legal custody without awarding joint physical custody where the parties have agreed to merely joint legal custody." Joint physical custody, thus, is conditional upon an agreement for joint legal custody. The question is, however, whether there can be joint legal custody, even without joint physical custody, unless there is an agreement of the parties. See Balbirer & McLachlan, "Family Law," 56 Conn. B.J. 26, 65 (1982). The succeeding sections of the statute provide the answer. A court may award joint legal custody, with or without joint physical custody, if the parties agree to joint custody or if one party seeks joint custody.

The second part of the statute, § 46b-56a (b), establishes a presumption that joint custody is in the best interests of the minor child where the parties have agreed to such an award or have agreed to it in open court. It has been held that whether such an agreement, in fact, has been made is a question for the trial court, and that without such an agreement, sole custody may be awarded. *Timm* v. *Timm,* 195 Conn. 202, 487 A.2d 191 (1985). This subsection also provides that if the court chooses not to enter a joint custody order, the court must state its reasons for the denial. The statute does not provide that, without agreement, joint custody may, nevertheless, be awarded.

Subsection (c) of General Statutes § 46b-56a deals with the situation where only one parent seeks an order of joint custody. Upon motion, the statute allows the court to order both parties to submit to conciliation. A conciliator is, by statutory definition, a clergyman, a physician, a domestic relations officer or a person experienced in marriage counselling. General Statutes

---

[9] The difference between a sole custodian and a joint legal custodian is that the sole custodian has the ultimate authority to make all decisions regarding a child's welfare, such as education, religious instruction and medical care whereas a joint legal custodian shares the responsibility for those decisions. See note, "Joint Custody Awards," 48 Fordham L. Rev. 105, 110 (1979).

§ 46b-53 (a). The need for "conciliation," as here used, implies that a point of view needs to be unified, that compatibility is otherwise lacking, or that reconciliation of ideas must be had, before joint custody can work.

The subsection does not expressly provide for an award of joint custody if the parties have become united on the question of joint custody, after conciliation. In such cases, however, once the recalcitrant party, after conciliation, has agreed to joint custody, the provisions of General Statutes § 46b-56a (b) become operative and the court can then award joint custody. The statute, read as a whole, reflects a legislative belief that joint custody cannot work unless both parties are united in its purposes. Therefore, joint custody cannot be an alternative to a sole custody award where neither seeks it and where no opportunity is given to the recalcitrant parent to embrace the concept. Further, it is significant that the statute contains no additional subsection providing for a procedure in the event neither parent seeks joint custody.

The trial court erred in awarding joint custody, subject to proof of the meeting of certain conditions by the father, at a future time, absent an agreement by the parties, or absent a motion by one of them for conciliation after a motion has been made seeking joint custody. The hearing ordered to be held in the future, on whether the father had been rehabilitated to the extent of being a suitable co-custodian, may cure the lack of notice at the original hearing that joint custody might be awarded, but it cannot cure the statutory premise of General Statutes § 46b-56a that a joint custody award requires agreement of the parents or a motion made by one of them.[10]

---

[10] Even if an award of joint custody were statutorily permissible without the agreement of the parties or without the motion of one party for joint custody, it remains doubtful that such an award would withstand appellate review absent notice to the parties that the trial court was considering an award of joint custody. See *Cappetta* v. *Cappetta,* 196 Conn. 10, 15, 490 A.2d 996 (1985).

Since it was error to award joint custody without agreement of the parties pursuant to General Statutes § 46b-56a, or after motion by one of them, it is unnecessary to discuss the claim of the plaintiff that the court erred in concluding that joint custody was in the best interests of the minor child.

## II

As part of its joint custody award, the trial court ordered that permanent removal of the child by either party from this state would result in *automatic* shifting of custody to the other. The paramount concern in awarding custody is the best interest of the child. *Hall* v. *Hall*, 186 Conn. 118, 121, 439 A.2d 447 (1982); *Presutti* v. *Presutti*, 181 Conn. 622, 626, 436 A.2d 299 (1980); *Guss* v. *Guss*, 1 Conn. App. 356, 360, 472 A.2d 790 (1984). "A child's best interests, however, cannot be prospectively determined." *Guss* v. *Guss*, supra, 360–61. The judicial hands of a future court cannot be bound by an earlier court's determination that the best interests of a child as to custody remain constant. A transfer of custody cannot be automatically accomplished upon the happening of a future event, in this case, removal of the child from Connecticut.[11]

## III

The financial awards of the trial court, its award of counsel fees to the plaintiff and its award of counsel

___

[11] The trial court in the present case found that it was in the best interests of the child to remain in Connecticut as of the date of its judgment. If a trial court so finds, its orders may prohibit removal of a child from the state. See *Presutti* v. *Presutti*, 181 Conn. 622, 436 A.2d 299 (1980); *Bozzi* v. *Bozzi*, 177 Conn. 232, 413 A.2d 834 (1979); *Raymond* v. *Raymond*, 165 Conn. 735, 345 A.2d 48 (1974); see also note, "Joint Custody Awards," 48 Fordham L. Rev. 105, 121 n.89 (1979). The plaintiff, in removing the child of the parties from this jurisdiction has frustrated the visitation rights of the father, and, at any future hearing relating to custody, may have provided the trial court with a ground for the transfer of custody to the defendant, the present noncustodial parent. See *In re Marriage of Wood*, 141 Cal. App. 3d 671, 190 Cal. Rptr. 469 (1983).

fees to the minor child's counsel to be paid in part by both parties, were well within the discretion of the trial court. So often and so consistently have the appellate courts of this state reiterated the proposition that such awards will not be disturbed unless the trial court clearly abused its discretion, that no citation is necessary.

## IV

Both parties appeal from the trial court's order prohibiting them from bathing or sleeping with their child or spanking her. There was no evidence that the plaintiff had disciplined the child by spanking her, and some that the defendant had done so, with psychiatric testimony that the child feared her father and that this fear was exacerbated when she was spanked by him. There was evidence that both parents had showered and slept with the child. A psychiatrist testified that it was harmful for the child to do so with her father, but not with her mother. The plaintiff and the defendant claim that the order unconstitutionally infringes upon their parental rights.

The United States Supreme Court has long recognized that freedom of personal choice in matters of family life is one of the liberties protected by the due process clause of the fourteenth amendment. See, e.g., *Bellotti* v. *Baird,* 443 U.S. 622, 637–38, 99 S. Ct. 3035, 61 L. Ed. 2d 797, reh. denied, 444 U.S. 887, 100 S. Ct. 185, 62 L. Ed. 2d 121 (1979); *Cleveland Board of Education* v. *LaFleur,* 414 U.S. 632, 639–40, 94 S. Ct. 791, 39 L. Ed. 2d 52 (1974); *Roe* v. *Wade,* 410 U.S. 113, 152–53, 93 S. Ct. 705, 35 L. Ed. 2d 147, reh. denied, 410 U.S. 959, 93 S. Ct. 1409, 35 L. Ed. 2d 694 (1973); *Eisenstadt* v. *Baird,* 405 U.S. 438, 453, 92 S. Ct. 1029, 31 L. Ed. 2d 349 (1972); *Loving* v. *Virginia,* 388 U.S. 1, 12, 87 S. Ct. 1817, 18 L. Ed. 2d 1010 (1967); *Pierce* v. *Society of Sisters,* 268 U.S. 510, 535, 45 S. Ct. 571, 69 L. Ed. 1070 (1925). "The [United States Supreme Court] has frequently emphasized the importance of the

family. The rights to conceive and to raise one's children have been deemed 'essential,' *Meyer* v. *Nebraska,* 262 U.S. 390, 399 [43 S. Ct. 625, 67 L. Ed. 1042] (1923), 'basic civil rights of man,' *Skinner* v. *Oklahoma,* 316 U.S. 535, 541 [62 S. Ct. 1110, 86 L. Ed. 1655] (1942), and '[r]ights far more precious . . . than property rights,' *May* v. *Anderson,* 345 U.S. 528, 533 [73 S. Ct. 840, 97 L. Ed. 1221] (1953). 'It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder.' *Prince* v. *Massachusetts,* 321 U.S. 158, 166 [64 S. Ct. 438, 88 L. Ed. 645] (1944). The integrity of the family unit has found protection in the Due Process Clause of the Fourteenth Amendment, *Meyer* v. *Nebraska,* supra, at 399, the Equal Protection Clause of the Fourteenth Amendment, *Skinner* v. *Oklahoma,* supra, at 541, and the Ninth Amendment, *Griswold* v. *Connecticut,* 381 U.S. 479, 496 [85 S. Ct. 1678, 14 L. Ed. 2d 510] (1965) (Goldberg, J., concurring)." *Stanley* v. *Illinois,* 405 U.S. 645, 651, 92 S. Ct. 1208, 31 L. Ed. 2d 551 (1972); see also note, "Developments in the Law—The Constitution and the Family," supra, 1350–53.

The previously cited cases arose in the context of total deprivation of custody of a child, or termination of parental rights, or in the context of statutory mandates relating to the education of all children within a particular state, rather than, as in the present case, in the context of a limitation or restriction on custody or visitation rights. The question here is whether a parent has the same constitutional rights in all instances.

General Statutes § 46b-56 (b) provides that the court, in making any order with respect to custody or visitation, shall be guided by the best interests of the child. In doing so, the court considers the recommendations of professionals and the rights of parents, but is ultimately concerned with the best interests of the child.

*Gallo* v. *Gallo*, 184 Conn. 36, 43, 440 A.2d 782 (1981). In that case, the trial court restricted the father's visitation rights with his child, by prohibiting overnight visitations if a woman unmarried to the father was present. The Supreme Court upheld the restriction, limited to a particular woman. There was no claim made by the father that his constitutional right to associate freely or to live with others of his choice was infringed and the case was decided on the ground that the trial court could have concluded reasonably that the welfare of the child was better served if his visits with his father contained the particular limitation.

There are many instances in which expert medical testimony may establish that certain things are physically or psychologically detrimental to a child's best interests. For example, some children cannot eat certain foods without dire consequences, others must be given particular medication, and others cannot psychologically endure, or endure well, certain practices of their parents. When there is evidence to substantiate such situations, and the trial court finds the evidence credible, and finds that the child's best interests require a limitation on visitation or custody consonant with the child's particular needs, it should enter orders which reflect those particular needs.

The constitutional right of a parent to have the right to raise a child without state interference is not necessarily involved when a court, within the context of a dissolution of marriage action brought by one of the parents, must determine what limitations, if any, consistent with the best interests of the child, should be placed on visitation rights and custody.

In this case, since there was no evidence that the plaintiff had spanked her child, and no evidence that showering and sleeping with her child was detrimental to the child's best interests, the order of the trial court, as to her, cannot stand. Since there was evidence

which the trial court could have found credible that it was not in the best interests of the child to be spanked by her father, or to bathe or to sleep with him, its orders as to him were not clearly erroneous.

There is error in part, the judgment is set aside and the case is remanded with direction to render judgment as on file except that those portions of the judgment relating to joint custody, to an automatic change of custody, and to orders concerning discipline and hygiene of the minor child as they relate to the plaintiff shall be omitted.

In this opinion the other judges concurred.