DALE M. SWEENEY *v.* DENNIS R. SWEENEY
(AC 23373)

Lavery, C. J., and Mihalakos, Dranginis, Flynn and West, Js.

Argued October 16, 2002—officially released February 25, 2003

*Victor J. Cavallo*, for the appellant (defendant).

*Sheila Sinha*, for the appellee (plaintiff).

*Mark H. Henderson*, for the minor child.

### Opinion

LAVERY, C. J. In this marital dissolution action, the defendant, Dennis R. Sweeney, appeals from the trial court's pendente lite order granting the motion of the plaintiff, Dale M. Sweeney, for permission to enroll the parties' minor child in parochial school. We raised the question on the court's own motion of whether the appeal should be dismissed for lack of a final judgment. After hearing oral argument on the matter, we conclude that the order is not immediately appealable as a final judgment.

On November 27, 2001, the plaintiff brought this action for a legal separation from the defendant. The defendant filed a cross complaint for dissolution of the

marriage and for sole legal custody of the parties' minor child. The plaintiff responded with an amended complaint also seeking dissolution of the marriage and sole legal custody of the minor child.

The court ordered joint legal custody, with the plaintiff as the "custodial parent."[1] The child had been baptized in the Roman Catholic faith and was scheduled to commence kindergarten in the 2002-2003 school year. On May 17, 2002, the defendant filed a motion stating that the parties did not agree on whether the child should attend public or parochial school and requesting "an Order of [the] Court setting the school that the minor child shall attend"[2] in the fall of 2002. Three weeks later, the plaintiff filed a motion seeking the court's permission to enroll the child in parochial school.

The plaintiff argued that her motion should be granted because the defendant had fully participated in the child's baptism ceremony and had agreed on at least two separate occasions to enroll the child in parochial school. The defendant argued that the parties had not agreed to send the child to parochial school, and that the school the plaintiff had selected was small, underfunded, lacked certification and had not provided the parties with information on standardized testing. The defendant further argued that an order permitting the plaintiff to enroll the child in parochial school would be in violation of the first amendment to the United States constitution.

On August 6, 2002, the court held an evidentiary hearing on the matter and granted the plaintiff's motion.[3]

---

[1] That term apparently referred to physical custody of the child.

[2] The defendant's motion specifically stated in relevant part that "the parties share joint legal custody of their minor child . . . . The parties are in disagreement over whether the child will attend public or parochial school . . . [and] for the reasons set forth above, Defendant moves for an Order of this Court setting the school that the minor child shall attend."

[3] The court never acted on the defendant's motion.

The court also ordered that the defendant pay for the child's tuition on a pendente lite basis, with credit to be received for any sums expended when the parties' assets were divided at the time of final judgment.

The defendant appealed from the court's orders on August 19, 2002. On August 23, 2002, the court held a hearing to consider the defendant's motion for an automatic stay pursuant to Practice Book § 61-11. The court rejected the notion that the orders would have a "spillover effect" on future permanent orders regarding the child's education, but "reluctantly" concluded that the orders should be stayed because they did not involve a custody matter. The plaintiff orally moved to terminate the stay pursuant to Practice Book § 61-11 (c) and (d).[4] The court granted the motion and, upon further reflection, modified the order regarding payment of tuition by requiring that the *plaintiff* "make the tuition payments without coming out of the assets because I don't think I can order them out of the assets."[5]

The defendant timely moved for review of the trial court's order terminating the stay. This court denied the motion for review. Thereafter, we placed the appeal on this court's own motion calendar. Counsel and pro se parties were ordered to appear and to give reasons, if any, why the defendant's appeal from the temporary order permitting the plaintiff to enroll the child in parochial school should not be dismissed for lack of a final judgment.[6]

---

[4] Practice Book § 61-11 (d) provides in relevant part that a motion to terminate a stay of execution may be filed before judgment. Practice Book § 61-11 (c) permits the court to terminate a stay of execution if "the judge who tried the case is of the opinion that (1) an extension to appeal is sought, or the appeal is taken, only for delay or (2) the due administration of justice so requires . . . ."

[5] In granting the plaintiff's motion, the court did not specify whether the order applied only to the 2002-2003 school year or would remain in effect until the issuance of the final dissolution orders.

[6] The parties also were asked to appear and to give reasons why that portion of the appeal challenging the obligation to pay the cost of parochial school should not be dismissed as moot in light of the trial court's order

On October 16, 2002, counsel for the parties and the minor child appeared before this court for oral argument. The defendant argued that the temporary order should be considered a final judgment because it concluded his joint custodial right to make an educational decision on behalf of the child. The defendant also argued that enrollment of the child in parochial school would result in irreparable harm because he would not be able to "undo" the religious teachings and practices to which the child would be exposed. The plaintiff responded that the order was not a final judgment because the trial court had determined that it did not involve a custody matter. Counsel for the child argued that the order involved a custody matter and, thus, was immediately appealable. He also urged this court to take the appeal because a final decision regarding the child's education would be in the child's best interest. We conclude that the order is not immediately appealable as a final judgment.

We begin our analysis by noting the well established rule that, with certain statutory exceptions, appeals shall be taken only from final judgments. See General Statutes §§ 51-197a and 52-263; see also Practice Book § 61-1. "An otherwise interlocutory order is appealable in two circumstances: (1) where the order or action terminates a separate and distinct proceeding, or (2) where the order or action so concludes the rights of the parties that further proceedings cannot affect them." *State* v. *Curcio*, 191 Conn. 27, 31, 463 A.2d 566 (1983).

Connecticut courts in family cases have permitted the immediate appeal of temporary orders of alimony and support; *Hiss* v. *Hiss*, 135 Conn. 333, 336, 64 A.2d

vacating its previous order that the defendant pay the cost of the child's parochial school education. At the subsequent hearing, both parties conceded that the financial issue was moot.

173 (1949); temporary custody orders; *Madigan* v. *Madigan*, 224 Conn. 749, 757, 620 A.2d 1276 (1993); and temporary visitation orders.[7] *Taff* v. *Bettcher*, 35 Conn. App. 421, 424 n.2, 646 A.2d 875 (1994). Temporary orders of alimony and support are considered final because, once paid by one spouse to another, such sums subsequently cannot be recovered on appeal from the final dissolution judgment. *Hiss* v. *Hiss*, supra, 336; see *Madigan* v. *Madigan*, supra, 755. Similar logic applies to temporary custody orders because they affect the "irreplaceable time and relationship shared between parent and child. It would be anomalous, therefore, to permit the appealability of otherwise nonreviewable orders relating to financial matters and to deny the appealability of orders relating to the personal interaction between a parent and a child." *Madigan* v. *Madigan*, supra, 755. We also have stated that temporary visitation orders are "so related to the custody orders as to render them immediately appealable." [8] *Taff* v. *Bettcher*, supra, 424 n.2.

Here, the court's temporary order permitting the plaintiff to enroll the parties' child in parochial school does not appear to fall within any of the established categories of appealable interlocutory orders in family cases. Nevertheless, we turn for guidance to the rele-

[7] In *Strobel* v. *Strobel*, 73 Conn. App. 428, 434, 808 A.2d 698, cert. granted, 262 Conn. 930, 814 A.2d 383 (2002), we concluded that a temporary order regarding visitation was not immediately appealable because the order was issued in response to an "emergency" situation and thus was "akin to an ex parte order of temporary custody, not a temporary order." Our Supreme Court has granted certification to appeal, limited to the following issue: "Did the Appellate Court properly dismiss this appeal for lack of a final judgment?" *Strobel* v. *Strobel*, 262 Conn. 930, 814 A.2d 383 (2002).

[8] Other temporary orders affecting the parent-child relationship deemed immediately appealable are orders precluding parties from filing any further motions regarding custody or visitation; *Taff* v. *Bettcher*, 243 Conn. 380, 384, 703 A.2d 759 (1997); and orders extending a child's commitment to the department of children and families. *In re Todd G.*, 49 Conn. App. 361, 365, 713 A.2d 1286 (1998).

vant statutory provision on joint custody to determine whether the order may be immediately appealable as a custody order.

General Statutes § 46b-56a (a) defines joint custody as "an order awarding legal custody of the minor child to both parents, providing for joint decision-making by the parents and providing that physical custody shall be shared by the parents . . . . The court may award joint legal custody without awarding joint physical custody where the parents have agreed to merely joint legal custody."

In *Emerick* v. *Emerick*, 5 Conn. App. 649, 656–57, 502 A.2d 933 (1985), cert. dismissed, 200 Conn. 804, 510 A.2d 192 (1986), we noted that under § 46b-56a (a), "joint physical custody is severable from joint legal custody." We also indicated that an order regarding education involves legal as opposed to physical custody when we explained that "[t]he difference between a sole custodian and a joint legal custodian is that the sole custodian has the ultimate authority to make all decisions regarding a child's welfare, such as education, religious instruction and medical care whereas a joint legal custodian shares the responsibility for those decisions." Id., 657 n.9; see also *Barzetti* v. *Marucci*, 66 Conn. App. 802, 803, 786 A.2d 432 (2001) (court's final orders awarded parties joint physical and legal custody, but granted plaintiff final decision-making authority on all medical decisions and granted defendant final decision-making authority on all other matters involving education and care of minor child).

Connecticut courts first considered the immediate appealability of temporary orders of custody in the *Madigan* case. See *Madigan* v. *Madigan*, supra, 224 Conn. 749. In *Madigan*, the plaintiff asked for joint custody of two of the parties' minor children, with each parent having the children for three day periods. Id.,

751–52. The defendant asked for sole custody, with visitation rights for the plaintiff. Id., 752. The trial court ordered joint custody, the children's primary residence to be with the defendant, and visitation rights for the plaintiff.[9] Id. Our Supreme Court subsequently determined that the trial court's "temporary custody orders" were immediately appealable. Id., 757.

In the present case, we conclude that the court's temporary order of legal custody is not governed by the ruling in *Madigan* because the substantive right at issue is the parent's authority to make decisions on behalf of the child, not the "irreplaceable time and relationship shared between parent and child." Id., 755. Furthermore, were *Madigan* to be construed so broadly, we would be in danger of "opening the floodgates" to a wave of appeals from temporary orders regarding education, religious instruction, medical care and a host of other issues, both trivial and significant, affecting a child's welfare. See *Jackson* v. *Jackson*, 2 Conn. App. 179, 196, 478 A.2d 1026, cert. denied, 194 Conn. 805, 482 A.2d 710 (1984); see also *Emerick* v. *Emerick*, supra, 5 Conn. App. 657 n.9. Such a result would not promote judicial economy and the important public policy of minimizing delay in trial court proceedings. *Madigan* v. *Madigan*, supra, 224 Conn. 752–53.

We nonetheless decline to adopt a bright line rule that would preclude appeals from all temporary orders of legal custody, preferring instead to consider such appeals on a case-by-case basis. Accordingly, the case before us presents an issue of first impression that requires our careful review.

---

[9] A review of the court file in the *Madigan* case indicates that the court also ordered that "during allowed periods of visitation, the plaintiff father shall be responsible for all medical/dental decisions on behalf of the children." In their briefs to our Supreme Court, however, that portion of the custody order was never contested by the parties.

We look to the arguments found persuasive in *Madigan* as a useful guide in our analysis. The *Madigan* court determined that temporary custody orders are immediately appealable because (1) they have irreparable consequences that cannot be repaired by the issuance of a subsequent order as part of the final dissolution judgment; (2) contested custody cases are often lengthy, which may delay resolution of the issues in dispute and interfere with the parent's substantive right over a significant period of time; (3) modification of a temporary order pursuant to General Statutes § 46b-56 is not an adequate substitute for the right to appeal from the parent's loss of a substantive right; and (4) such orders are likely to have an adverse spillover effect on a subsequent permanent custody decision. Id., 756–57.

We first examine whether the court's temporary order regarding parochial education caused the defendant to suffer "irreparable consequences." In making such a finding, the key elements to be considered are the nature of the consequences suffered by the defendant[10] and whether those consequences can be repaired by the issuance of a subsequent order as part of the final dissolution judgment.

Our Supreme Court has stated that the parents' interest in the care, custody and control of their children is "perhaps the oldest of the fundamental liberty interests . . . ." (Internal quotation marks omitted.) *Roth* v. *Weston*, 259 Conn. 202, 216, 789 A.2d 431 (2002). The court also has spoken of the "right of the custodial parent to make educational decisions in the best interests of the child . . . ." *Hardisty* v. *Hardisty*, 183 Conn. 253, 263,

[10] We do not examine the issue of irreparable harm to the child in this case, as that issue is not germane to whether the court's temporary order so affected the *parent's* rights as to be immediately appealable. See *Madigan* v. *Madigan*, supra, 224 Conn. 754; *State* v. *Curcio*, supra, 191 Conn. 31; *Hiss* v. *Hiss*, supra, 135 Conn. 333.

439 A.2d 307 (1981). The importance of that right cannot be underestimated. Education exposes a child to cultural values and, in the case of parochial schools, religious influences. We conclude, however, that to the extent the defendant has a joint custodial right to decide whether his child shall attend public or parochial school, he freely relinquished that right when he requested the court to settle the parties' dispute by "setting the school that the minor child shall attend."[11] In seeking the court's intervention, both parties had the opportunity to express their views during a full evidentiary hearing on the matter. Moreover, the wording of the defendant's motion indicates, without question, that he was fully aware his viewpoint might not prevail.

Furthermore, the court's temporary order did not subject the defendant to a permanent deprivation that cannot be remedied by a subsequent order. The defendant is not precluded from expressing his views when the issue of parochial education is raised again prior to the conclusion of the dissolution proceedings. In addition, the temporary order did not give to the plaintiff sole decision-making authority regarding other aspects of the child's education, nor did it prevent the defendant from participating in future educational decisions affecting the child. The order merely resolved the parties' disagreement over a single, isolated issue, namely, whether the child shall attend public or parochial school in the fall of 2002.[12]

In light of our conclusion, the remaining arguments in *Madigan* are either unpersuasive or irrelevant. Because

---

[11] The fact that the court ruled only on the plaintiff's motion, and not on the defendant's motion, is irrelevant because both motions requested that the court settle the dispute.

[12] It is not clear whether the temporary order will remain in effect until the issuance of the final dissolution orders or whether the plaintiff will be required to seek another temporary order if the dissolution proceedings have not been concluded by the beginning of the next school year.

the defendant has not suffered an irreparable loss, any delay in the dissolution proceedings will not subject him to a further deprivation. The argument that an appeal is the best means available to vindicate the loss also is unavailing because no such loss occurred. Finally, it cannot be assumed that the child's enrollment in parochial school for the current school year necessarily will influence the court's future orders regarding the child's education. The court considers many factors when making a permanent decision, including the availability and adequacy of the public schools, and the child's special needs and general welfare. *Hardisty* v. *Hardisty*, supra, 183 Conn. 262; see also *Carroll* v. *Carroll*, 55 Conn. App. 18, 24, 737 A.2d 963 (1999). Indeed, at the hearing on the automatic stay, the court considered and rejected the defendant's argument that permitting enrollment of the child in parochial school would have a "spillover effect" on any future orders regarding the child's education. Moreover, should there be any "spillover effect," the defendant may appeal from the court's final orders. Accordingly, the court's pendente lite order is not immediately appealable under the second prong of *Curcio*. See *State* v. *Curcio*, supra, 191 Conn. 31.

The appeal is dismissed.

In this opinion the other judges concurred.