JOANN O'BARA DADDIO *v.* KENNETH S. O'BARA
(AC 26931)

Schaller, Rogers and Foti, Js.

Argued May 1—officially released August 29, 2006

*Robert L. Sweeney, Jr.*, for the appellant (defendant).

*Maria Chiarelli*, with whom was *Joseph Chiarelli*, for the appellee (plaintiff).

*Thomas A. Esposito,* guardian ad litem for the minor child.

*Opinion*

SCHALLER, J. The defendant father, Kenneth S. O'Bara, appeals from the judgment of the trial court denying his postdissolution motion to spend additional time with his minor child and modifying its order from joint legal custody to sole legal custody in favor of the plaintiff mother, Joann O'Bara Daddio.[1] On appeal, the defendant claims that the court improperly (1) awarded the plaintiff sole legal custody of their minor child, (2) denied him additional parenting time with the minor child, (3) permitted the plaintiff to have authority to schedule regularly recurring activities for the child, and (4) awarded the plaintiff the sole authority to schedule medical and dental appointments. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our discussion. The parties were married on November 12, 1994, and have one child. The court dissolved their marriage on June 25, 1997. The court incorporated the terms of the parties' written agreement, dated June 25, 1997, into the judgment of dissolution. The parties had agreed to joint legal custody of the child, with the plaintiff having primary physical custody.[2] The agreement provided, inter alia, that the "parties shall make good faith attempts to consult one another on all major decisions concerning [the child], including but

---

[1] The plaintiff is now known as Joann Daddio.

[2] General Statutes § 46b-56a (b) provides in relevant part: "There shall be a presumption, affecting the burden of proof, that joint custody is in the best interests of a minor child where the parents have agreed to an award of joint custody or so agree in open court at a hearing for the purpose of determining the custody of the minor child or children of the marriage. If the court declines to enter an order awarding joint custody pursuant to this subsection, the court shall state in its decision the reasons for denial of an award of joint custody."

not limited to [his] health, education, religion and welfare. In the event the parties are unable to reach an agreement on issues concerning [the child], the primary custodial parent [the plaintiff] shall make such decisions. This does not preclude either party from taking reasonable and necessary action on behalf of the minor child in the event of an emergency, nor from making 'day-to-day' decisions when the minor child is with one or the other parent." With respect to the defendant's parenting time, the parties arranged a schedule that included an overnight visit on alternating weekends.

On April 24, 2000, the parties agreed to modify their agreement. The parties continued having joint legal custody, and although the plaintiff retained ultimate decision-making authority, she was required to confer with the defendant regarding significant decisions concerning the child's health, education and general welfare. The overnight visits with the defendant increased to one every week and alternating weekends. On May 9, 2002, the parties again modified the agreement, increasing the defendant's parenting time. The court approved both modifications.

On July 2, 2003, the defendant, acting pro se, filed a motion to modify custody and child support. Specifically, the defendant requested joint physical custody of the child, and an increase of four additional overnight visits per month. He also sought to eliminate his child support obligation. He further requested that he be allowed to make decisions regarding the treatment of illnesses when the child was in his custody. The plaintiff responded by moving for sole legal custody, a reduction in the number of visitations and an increase in child support. After the defendant filed an objection to the plaintiff's motion, the court held a hearing over the course of several days.

On August 31, 2005, the court issued a memorandum of decision addressing the issues raised in the parties'

respective motions. The court denied the defendant's request for additional time with the child on the basis of the evidence from the family relations counselor, psychologist and court-appointed guardian ad litem. Their testimony and reports indicated that the child suffered extensively from the detrimental effects of consistent litigation initiated by the defendant in his efforts to spend more time with the child.[3] The court found that the frequent and repeated litigation served to harm the child and deprived him of the ability to grow and develop. The court found that the defendant failed to recognize the harm caused by his "strategy of attrition by repeatedly asking for small increases in his parenting time." Each success resulted in encouraging the defendant to seek more time. The court concluded that to break this cycle, it was in the child's best interest to deny the defendant's request for additional time.[4]

With respect to the parties' respective requests to change the custody order, the court found that "[t]he evidence overwhelmingly proves that these parents are unable to work together cooperatively except on the simplest of issues." Accordingly, the court determined that an order giving the plaintiff sole legal custody was in the best interest of the child and that all the previous orders were not in his best interest. This order provided the plaintiff with the final authority to schedule regularly recurring activities, such as youth sports or music lessons. The court determined that such activities should be scheduled so as to impact the parenting time of both parties equally, when possible. When such activities occur during the defendant's parenting time, he is responsible for ensuring the child's attendance. Finally, the court approved the parties' agreement that any

---

[3] The consistent litigation further harmed the child by siphoning the plaintiff's energy from her parenting skills.

[4] The court also denied the plaintiff's motion to reduce the defendant's time with the child.

future motions to modify custody, visitation or parenting orders first must be filed with the presiding judge for family matters in the judicial district of New Haven and approved by that judge as raising legitimate issues. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant argues that that the court improperly awarded the plaintiff sole legal custody of their minor child. Specifically, he claims that there was no evidence to support the court's finding that the original order of joint legal custody was not in the best interest of the child when it was entered. We are not persuaded.

"The standard of review in family matters is well settled. An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Rasey* v. *Berger*, 92 Conn. App. 218, 220, 883 A.2d 1268 (2005); see also *Oliver* v. *Oliver*, 85 Conn. App. 57, 61, 855 A.2d 1022 (2004).

We now set forth the relevant legal principles. "The authority to render orders concerning custody and visitation is found in General Statutes § 46b-56, which provides in relevant part: (a) In any controversy before the Superior Court . . . the court may at any time make or modify any proper order regarding . . . custody and visitation . . . . That section further provides that in modifying any order with respect to custody or visitation, the court shall (1) be guided by the best interests of the child . . . . General Statutes § 46b-56 (b). [*Our Supreme Court*] *has limited the broad discretion given the trial court to modify custody orders under General Statutes § 46b-56 by requiring that modification of a custody award be based upon* either a material change of circumstances which alters the court's finding of the best interests of the child . . . *or a finding that the custody order sought to be modified was not based upon the best interests of the child.* . . .

"To obtain a modification, the moving party must demonstrate that circumstances have changed since the last court order such that it would be unjust or inequitable to hold either party to it. Because the establishment of changed circumstances is a condition precedent to a party's relief, it is pertinent for the trial court to inquire as to what, if any, new circumstance warrants a modification of the existing order. In making such an inquiry, the trial court's discretion is essential. The power of the trial court to modify the existing order does not, however, include the power to retry issues already decided . . . . Rather, the trial court's discretion only includes the power to adapt the order to some distinct and definite change in the circumstances or conditions of the parties." (Citation omitted; emphasis added; internal quotation marks omitted.) *Kelly* v. *Kelly*, 54 Conn. App. 50, 55–56, 732 A.2d 808 (1999); see also *Hall* v. *Hall*, 186 Conn. 118, 122, 439 A.2d 447 (1982);

*Bretherton* v. *Bretherton*, 72 Conn. App. 528, 543, 805 A.2d 766 (2002).

The following additional facts are necessary for the resolution of the defendant's claim. During the hearing, the court heard testimony from the parties, Heather R. Clinton, a family relations counselor, John T. Collins, a psychologist, and Thomas A. Esposito, the child's guardian ad litem. Both Clinton and Collins submitted written reports to the court. Clinton's report, dated March 31, 2004, recommended that custody and visitation remain the same. This report, however, was completed more than one year before the hearing. At the hearing, Clinton testified that the parties had been involved in episodes of litigation since the child was three months old.[5] She noted the defendant's cyclical pattern of using litigation as a means to obtain more time with the child and then repeating the process. Clinton explained that the plaintiff had become concerned with the defendant's history of repeated requests for additional increments of time with the child. She concluded that the defendant had lost sight of the child's best interest and instead focused on his need to spend more and more time with the child. Essentially, the constant barrage of litigation resulted in a tremendous amount of stress on the family, particularly the child.

Clinton described her most recent interview with the child. She believed that the child was responding to questions in an effort to please the defendant rather than give his own thoughts. Specifically, the child indicated his concerns regarding the amount of parenting time that the defendant had. Clinton noted that the child appeared to be under an incredible burden and focused his energies on pleasing his parents rather than dealing

---

[5] Collins testified that the extensive litigation had been an "extreme hardship" and an "emotional abuse" of the child.

with his attention deficit disorder.[6] Clinton repeated her belief that this constant litigation, initiated by the defendant, and causing intrafamily conflict, was contrary to the best interest of the child.[7]

After the parties had examined Clinton, the court inquired as to her opinion regarding the plaintiff's motion for sole legal custody. Clinton testified that she believed that joint legal custody, with the plaintiff having final decision-making authority, was an arrangement that protected the child as much as sole custody would. She testified that if the child was signed up for an after school activity, it would be important for the child to attend all of the events associated with that activity. She concluded that on the basis of their history, the parties realistically could not be expected to work together to ensure that the child was a regular participant. Clinton noted that "one parent needs to make these decisions. They haven't demonstrated an ability to agree on extracurricular activity and to support the child in [such activities]."

Upon further questioning from the court, Clinton stated that she rarely recommended "shared physical and joint legal decision making" unless the parents demonstrated exceptional abilities of communication and

---

[6] Clinton testified that in addition to having attention deficit disorder, the child has been described by his pediatrician as "socially awkward." Furthermore, the perpetual litigation was preventing him from learning how to resolve conflicts properly and to engage in healthy relationships.

[7] Clinton further elaborated her opinions as follows: "[M]y impression of this child is that all of his energy goes into making sure that he says the right thing. That things are kept equal. That he does not hurt either one of his parents. All of this energy to please, to avoid conflict. He lacked the spontaneity that most children have. You know what's fun. What do you like to do? I mean, [with] those questions this child was like a deer in the headlights. These are spontaneous questions . . . . I mean, how sad that a nine and a half year old can't tell you what his interests are and what he likes to do. That's an emotionally loaded question for this little boy, so his chances of developing a healthy relationship as an adult as he gets older are going to be—I think he's at risk for that being impaired. I mean, he needs to be protected, and if his parents can't do this for him, then somebody needs to."

cooperation, which was not the case with these parties. Clinton then reevaluated her written opinion and stated that although she had recommended joint legal custody with the plaintiff having the final decision-making authority, it now appeared that sole legal custody on the part of the plaintiff was in the child's best interest.[8]

---

[8] The following colloquy occurred between the court and Clinton:

"The Court: Well, on reconsideration, do you have anything else you might recommend, something different?

"[The Witness]: You know, I think—I was trying to give the parents the—the opportunity in—in recommending that they maintain the joint legal decision making, with dad having—I mean, with, excuse me, with the mother having final say. I was trying to give them the opportunity to try and—and improve their communication with each other.

"You know, sole decision making may be what needs to happen, in terms of setting a boundary that's very clear and where there's no misunderstanding, in terms of—of who has the decision making.

"And, ideally, that, you know—you know, they—that way if, you know, [the plaintiff] . . . signs [the child] up for soccer, that that's a decision that's upheld. That that's commitment, that [the child], now, needs to go to soccer, no matter whose house he's at, that he needs to attend those events if he's going to be on that team.

"I hate to—you know, I hate to restrict a parent and say that, you know, and dictate what they need to do on their parenting time. But, I think, when you have a child that's . . . you know, on the brink of preadolescence, I think you need to—they're all about peer relationships and their . . . socialization. And, I think, if—if their conflict impedes that, that's going to be very dangerous for [the child].

"The Court: Well, you said may, do you think—may is awfully tentative. You said sole decision may—sole decision making may be necessary. Now, what—I mean . . . obviously at some point, [I] need to issue a decision that will have some finality in these people's lives, in this child's life. So, what's—what's your recommendation?

"[The Witness]: I think it needs to be sole decision making. . . . [T]his has gone on for an additional year since I wrote my report."

At oral argument, the defendant claimed that Clinton never changed her recommendation from joint custody to sole custody. He argues that Clinton never stated that it would be in the child's best interest that the plaintiff have sole custody. Although a review of the transcript reveals that Clinton never used the phrase "sole custody," it is clear that is what she meant when she recommended that the plaintiff have "sole decision making." We further note that in her written report, she had favored maintaining joint legal custody. During her testimony, however, she indicated she was *revising* her opinion to something different, that is, sole custody in favor of the plaintiff.

Our review of the record reveals that the court's determination that it was in the child's best interest for the plaintiff to have sole legal custody had a basis in the evidence. The record is replete with evidence that the plaintiff and the defendant had been unable, for a significant amount of time, to work together with respect to the child. Moreover, despite her previous written report, Clinton recommended during the hearing that the plaintiff have sole custody of the child. Clinton testified that sole decision-making authority in the plaintiff would serve to set a boundary for the defendant that would reduce future conflict.

Esposito testified that he had struggled with his recommendation regarding the custody issue.[9] He indicated that he had reviewed both Clinton's report and testimony, and spoken with Collins and the defendant. Esposito ultimately recommended sole legal custody in favor of the plaintiff, but acknowledged that he would be comfortable with joint legal custody and the plaintiff having final authority to make decisions regarding the child.

The court found that the "evidence overwhelmingly proves that these parents are unable to work together cooperatively except on the simplest of issues." The court further stated that the parties lack a common base, similar values and respect for each other. The court noted that joint custody, in order to be effective and in the child's best interest, requires reasoned communication and therefore concluded that the parties had failed to meet this standard. In fact, the parties' agreement *required* consultation on major issues involving the child. As a result, the court found that the original order regarding custody, and all those subsequent, were not in the child's best interest.

[9] Esposito also stated that the defendant did not understand the damaging effect the perpetual litigation had on the child.

"General Statutes § 46b-56a (a) defines joint custody as an order awarding legal custody of the minor child to both parents, providing for joint decision-making by the parents and providing that physical custody shall be shared by the parents . . . . The court may award joint legal custody without awarding joint physical custody where the parents have agreed to merely joint legal custody.

"In *Emerick* v. *Emerick*, 5 Conn. App. 649, 656–57, 502 A.2d 933 (1985), cert. dismissed, 200 Conn. 804, 510 A.2d 192 (1986), we . . . explained that [t]he difference between a sole custodian and a joint legal custodian is that the sole custodian has the ultimate authority to make all decisions regarding a child's welfare, such as education, religious instruction and medical care whereas a joint legal custodian shares the responsibility for those decisions." (Internal quotation marks omitted.) *Sweeney* v. *Sweeney*, 75 Conn. App. 279, 285–86, 815 A.2d 287 (2003), rev'd on other grounds, 271 Conn. 193, 856 A.2d 977 (2004); see also *Zitnay* v. *Zitnay*, 90 Conn. App. 71, 77, 875 A.2d 583, cert. denied, 276 Conn. 918, 888 A.2d 90 (2005).

In the present case, there was ample evidence before the court pertaining to the parties' inability to cooperate and communicate with respect to the decisions regarding the minor child. Simply put, the parenting arrangement, contemplated by the orders of joint legal custody, was not working. The court described the defendant as "intense, overbearing and controlling" and the plaintiff as "more passive and submissive . . . ." Their interactions resulted in litigation that had a "toxic" effect on the child. It is clear from the record that the evidence supported the court's conclusion that joint legal custody, which requires a level of cooperation between parents, was not in the child's best interest.

We further note that both Clinton and Esposito recommended that sole legal custody be awarded to the

plaintiff. "The court may also take into account the recommendations of the child's therapist; see *Szczerkowski* v. *Karmelowicz*, 60 Conn. App. 429, 433–34, 759 A.2d 1050 (2000); *In re David E.*, 4 Conn. App. 653, 657, 496 A.2d 229 (1985); and the child's guardian ad litem. See *Schult* v. *Schult*, [241 Conn. 767, 779, 699 A.2d 134 (1997)] (the guardian ad litem is the representative of the child's best interests)." (Internal quotation marks omitted.) *Janik* v. *Janik*, 61 Conn. App. 175, 181, 763 A.2d 65 (2000), cert. denied, 255 Conn. 940, 768 A.2d 949 (2001).

Given the record before us, we conclude that the court did not abuse its discretion by awarding sole legal custody of the minor child to the plaintiff. We are mindful of our limited standard of review in such cases. "The court's discretion in determining whether a modification of custody should be granted is essential. . . . [A] mere difference of opinion or judgment cannot justify the intervention of this court. Nothing short of a conviction that the action of the trial court is one which discloses a clear abuse of discretion can warrant our interference." (Citation omitted; internal quotation marks omitted.) Id.; see also *Brubeck* v. *Burns-Brubeck*, 42 Conn. App. 583, 586–87, 680 A.2d 327 (1996). In short, we conclude that the court properly determined that it was in the best interest of the minor child that the plaintiff have sole legal custody.

## II

The defendant next argues that the court improperly denied him additional parenting time with the child. Specifically, the defendant claims that the court abused its discretion by denying him additional time despite finding that the increase would not harm the child and that the child does well with him. In further support, the defendant contends that the court concluded that

there was no evidence that warranted reducing his parenting time. We disagree.

"The well settled standard of review in domestic relations cases is that this court will not disturb trial court orders unless the trial court has abused its legal discretion or its findings have no reasonable basis in the facts. . . . As has often been explained, the foundation for this standard is that the trial court is in a clearly advantageous position to assess the personal factors significant to a domestic relations case, such as demeanor and attitude of the parties to the hearing. . . . In determining whether there has been an abuse of discretion, the ultimate issue is whether the court could reasonably conclude as it did. . . .

"[I]n determining [whether there has been an abuse of discretion] the unquestioned rule is that great weight is due to the action of the trial court and every reasonable presumption should be given in favor of its correctness. . . . [W]e do not review the evidence to determine whether a conclusion different from the one reached could have been reached." (Internal quotation marks omitted.) *McGinty* v. *McGinty*, 66 Conn. App. 35, 39–40, 783 A.2d 1170 (2001); see also General Statutes § 46b-56 (b) (court guided by best interest of child with respect to visitation issues).

The following additional facts are necessary for our discussion. The court stated that, on the surface, the defendant's request for an additional two or four days a month with the child appeared both modest and reasonable. Nevertheless, on the basis of the testimony from the experts, which the court described as consistent, persuasive and compelling, the court found that such a modification was not in the child's best interest. Specifically, the court determined that the defendant would continue his "strategy of attrition by repeatedly asking for small increases in his parenting time . . .

[that] encouraged him to seek yet more time." The defendant failed to recognize the harmful effects of this strategy on the child.

The court stated that the child had been described as "vulnerable" and that he devoted his energies to pleasing his parents rather than growing and developing into adolescence. The conflict between his parents also placed the child between Scylla and Charybdis,[10] that is, a proverbial classic dilemma of having to choose his way between the respective parent's desires. Although the extra time itself would not harm the child, the court explained that it was the defendant's intention to use this gain as a springboard for future litigation. Specifically, the court stated that the defendant had "given numerous signals that he will again seek additional parenting time in the future. Yet [the child's] best interest requires an end to litigation between his parents." The small increment in parenting time sought did not cause harm, but rather it was the defendant's pattern of using these minor increases to fuel a perpetual cycle of future requests and corresponding litigation that resulted in damage to the minor child. In other words, it was not the individual increase viewed in isolation that was harmful, but the overall pattern of a constant stream of requests, conflict and litigation that served to erode and negatively impact the health of the minor child.

We conclude that the court did not abuse its discretion. The defendant has taken isolated statements from the court's decision in support of his argument on appeal. We, however, review the entire record and, applying the appropriate deference regarding visitation

[10] See, e.g., *Dwyer* v. *Commissioner of Correction*, 69 Conn. App. 551, 561 n.10, 796 A.2d 1212, cert. denied, 261 Conn. 906, 804 A.2d 212 (2002); *State* v. *Robinson*, 38 Conn. App. 598, 615, 662 A.2d 1295 (1995), rev'd on other grounds, 237 Conn. 238, 676 A.2d 384 (1996).

issues, determine that the court acted well within its broad discretion in denying the defendant's request for additional parenting time with the child.

## III

The defendant next argues that the court improperly permitted the plaintiff the authority to schedule regularly recurring activities for the child. Specifically, he claims that the plaintiff's ability to schedule activities will, in effect, decrease his parenting time because he will be obligated to ensure that the child participates in these activities during his parenting time. We are not persuaded.

We review the defendant's claim under the abuse of discretion standard. *McGinty* v. *McGinty*, supra, 66 Conn. App. 39–40. In part I, we concluded that the court did not abuse its discretion in granting the plaintiff sole custody of the child. As such, the plaintiff has sole decision-making authority on behalf of the minor child, including what activities he participates in and when those activities occur. Moreover, Clinton and Collins testified as to the importance of these activities to the child's development. Clinton stated that participating in an extracurricular activity would serve as a social escape for the child and help him master his peer relationships. Collins indicated that it would be a positive experience for the child to participate in such activities. If the child started such an activity and the defendant prevented him from participating because it was his parenting time, then the child would miss out and be harmed. We agree with the court that being deprived of such activities would not be in the child's best interest. Accordingly, we conclude that the court did not abuse its discretion.

## IV

The defendant next argues that the court improperly awarded the plaintiff the sole authority to schedule

medical and dental appointments. Specifically, the defendant claims that the court abused its discretion by permitting the plaintiff to make such appointments without notifying him as to the time and location. We are not persuaded.

The following additional facts are necessary for our discussion. Esposito made a specific recommendation regarding which party should attend the child's medical and dental appointments. He suggested that when the child was with the plaintiff, she should take him to appointments and that when the child was with the defendant, he should be permitted to take him to appointments. With respect to annual visits, the defendant would be responsible for taking the child during even years, and the plaintiff would assume that duty in odd years. Due to problems in the past, however, Esposito indicated that it would be in the child's best interest for only one parent to be present, with the exception of emergency situations. Clinton testified that the defendant should be permitted to take the child to a doctor on his parenting days, if the child was ill. Collins made a similar recommendation, with the possible exception of the annual physical examination.

The court found that having both parents attend medical appointments had been a source of tension for the child and an opportunity for conflict. The court concluded: "As the sole legal custodian, the [plaintiff] should be the one who schedules and takes [the child] to his annual physicals, to well-care appointments, and to routine or nonemergency . . . medical and dental visits. If she wants or is willing to have the [defendant] attend, she may notify him of the appointment. After [the child] has received any medical care, the [plaintiff] shall promptly notify the [defendant] of the reason for the visit and any treatment or medications prescribed.

If [the child] is hospitalized or goes to the emergency room because of physical injury, she shall notify [the defendant] as soon as possible. If [the child] becomes sick during the [defendant's] parenting time and needs medical care before [the child] goes back to [the plaintiff], the [defendant] may take him for emergency treatment, but he should immediately notify the [plaintiff] so that she can attend and make the medical decisions. If she is unable to attend and the [defendant] cannot reach her by telephone, the [defendant] is authorized to make emergency medical decisions for [the child] until . . . the mother can be reached. The [defendant] shall promptly notify the [plaintiff] of doctors' visits and medical treatment provided to [the child]."

Although the court's decision was contrary to the recommendation of the experts and the child's guardian ad litem, we conclude that it was not an abuse of discretion. First, we note that a court is not bound to accept the recommendations of experts in a domestic case. See *Szczerkowski* v. *Karmelowicz*, supra, 60 Conn. App. 434. Moreover, the court's order flows naturally from its decision to award the plaintiff sole custody. Such an order also effectuates the important goal of minimizing conflict between the parties, something that all involved have agreed is of paramount importance. Finally, we note that the court order requires the plaintiff to inform the defendant of the child's medical status, thereby keeping him apprised of the child's condition. We conclude, therefore, that the court did not abuse its discretion by awarding the plaintiff the sole authority to schedule medical and dental appointments.

The judgment is affirmed.

In this opinion the other judges concurred.